## BLACKSHEAR v. STATE.

### No. 17770.

Court of Criminal Appeals of Texas.

June 17, 1936.

P. O. Beard, Paul Warren, and M. M. O'Banion, all of Marshall, for appellant.

Benjamin Woodall, Co. Atty., and Reagan R. Huffman, Asst. Co. Atty., both of Marshall, G. L. Florence, of Gilmer, and Lloyd W. Davidson, State's Atty., of Austin, for the State.

HAWKINS, Judge.

Conviction is for murder; punishment being assessed at death.

The trial was had in Harrison county on a change of venue from Smith county.

Opinions on two former appeals are found reported in 123 Tex. 111, 58 S.W. (2d) 105, and 126 Tex. 417, 72 S.W.(2d) 601.

The testimony adduced by the state on the present trial is substantially the same as that set out in the opinion on the first appeal. However, formerly appellant did not testify, whereas upon the present trial he took the stand and denied that he committed the homicide. Also, he repudiated his confession, and gave testimony to the effect that the torture he endured while being confined in a dungeon caused him to state to the officers that he killed Viola Brimberry (deceased) and her husband, George Brimberry. His testimony also raised the issue of alibi.

Eliminating the confession, the state would rely entirely upon circumstantial evidence. As showing the materiality of the written statement, we quote from Blackshear v. State, 123 Tex.Cr.R. 111, 58 S.W. (2d) 105, as follows: "In his written statement, appellant declared that he went to the home of the Brimberrys for the purpose of committing robbery; that he enticed George Brimberry away from the cabin and killed him by hitting him over the head with an iron wrench; that he then returned to the cabin and killed deceased by striking her over the head with a smoothing iron; that he took money from the parties amounting to $17; that he secured an old magazine and wrote upon it 'A negro killed me,' and placed the magazine in the left hand of deceased, and the pencil in her right hand. Further it was stated in the confession that he (appellant) had become infatuated with a married woman, with whom he had lived for some time; that he had left her, but she had insisted that he come back to her; that he had no money, and committed the murder and robbery for the purpose of securing money."

On the former trials appellant appears to have interposed no objection to the introduction of the confession. On the present trial he timely and properly interposed his objections, and when the testimony was concluded he renewed said objections and

requested the court to withdraw the confession from the consideration of the jury.

It was an admitted fact that appellant was incarcerated in a dark cell for approximately six days and nights. He testified that the fear that he would have to undergo further incarceration in said cell caused him to make the statement. He said: "I signed it to get out of that dark cell. I wouldn't have signed it for any other reason. I never signed it for any other purpose. I did not tell them right then that the statement wasn't true. I had told them before I made the statement that it wasn't true. During the time I was in the dark cell they put the feed in there but I didn't eat. I could not eat because of the odor in there. That odor was from—you want me to tell you?" He testified further: "I made that statement in order to get out of the dark cell. I would have made one if they had asked me about kidnapping the Lindbergh baby in order to have gotten out of that dark cell. I would rather they had have taken me out and shot me than to have gone back in that dark cell."

The evidence shows that when first arrested appellant was placed in the dark cell by orders of the arresting officer. He was taken out in a few days by the same officer and an effort made to secure a confession. Upon failure to secure it, he was again placed in the same dark cell, where he remained until the confession was obtained. After having been taken from the cell upon the occasion of making the confession, appellant was questioned approximately two hours before he confessed. After the confession was obtained, and not before, he was placed in the jail with the other prisoners, and at no time after this was he returned to the dark cell. The cell in question was in the basement under the steps of the courthouse. It was so dark that one's hand could hardly be seen before him. The only ventilation came from a small crack under the door. There were no lights, no chairs, and no bed. Appellant slept on a mattress on the concrete floor. He could not obtain a drink of water unless it was brought to him by the jailer. There was no commode; and, according to appellant's testimony, the stench resulting from his answering calls of nature in the corner of the cell was unbearable. One of the officers testified that the cell was cleaned out at least every two days. We quote from the testimony of one of the officers, as follows: "It would depend upon his physical condition, according to his strength, and

constitution, to withstand the abuse. It would depend upon a man's constitution. It would depend largely upon the condition of a man's physical strength as to what effect it would have on him. It would have more effect, and have a tendency to break down a weaker man that went in there than a strong man. Of course, it would be hard on any man that went in there with practically no ventilation. The longer a man stayed, the more odor it had. Frankly, I don't believe I could stand it, myself."

We think the record conclusively shows that the purpose in placing appellant in solitary confinement under the conditions heretofore described was to procure a confession. After he confessed, he was not returned to the dark cell, but was placed in jail with the other prisoners. We are also of opinion that it was shown beyond dispute that the confession was made under the influence of fear resulting from the unbearable situation in which appellant had found himself for six days and nights. It is therefore our conclusion that there was no issue for the jury, as the uncontroverted evidence conclusively established that the confession was involuntary. We quote from State v. McCullum, 18 Wash. 394, 51 P. 1044, 1045, as follows: "As the legal custodian of these prisoners, the chief of police was only authorized by law to confine and safely keep them, to the end that their attendance might be secured at the trial. To keep an accused person in a dark cell, in order thereby to obtain a confession from him, is to punish him for refusing to confess; and the act of so keeping him constitutes, in itself, a continuing threat. To say that the law will not permit a confession made under such circumstances to be given in evidence is to state a proposition which needs neither argument nor authorities in its support. The mere statement of the proposition carries its own argument. It appeals to our sense of fairness. A person who has been induced by fear to make a confession is not bound by such confession, and the practice of extorting confessions from persons accused of crime by confining them in dark cells until a confession is wrung from them is a practice that cannot be condemned too strongly. It cannot receive judicial sanction." We take the following quotation from State v. Miller, 61 Wash. 125, 111 P. 1053, 1054, Ann.Cas.1912B, 1053: "The record is so full of this kind of testimony and so plainly indicates the fact that the sacred rights of citizenship had been invaded by the offi-

cers of the jail, the police, and detective department, that it is scarcely necessary to cite further instances. Neither policemen, detectives, nor jailers are clothed in this country with inquisitorial powers. It is true that some of the laws of Spain have been ingrafted on ours; but not the dungeon, the bludgeon, the burning faggot or any of the concomitant tortures of the Inquisition. These belong to the ages of bigotry, intolerance, and superstition, and have no place in our civilization. An attempt to revive them, even in mild form, ought to call forth the execration of the people, and the severest condemnation of the law."

The judgment is reversed, and the cause remanded.