BEN PICKETT V. STATE.

No. 24564. December 21, 1949.
Rehearing Denied April 5, 1950.
Application for Permission to File Second Motion for
Rehearing Denied (Without Written Opinion) April 19, 1950.
Petition for Writ of Certiorari Denied October 23, 1950.

196

*M. Gabriel Nahas, Jr.*, Houston, for appellant.

*A. C. Winborn*, Criminal District Attorney, *E. T. Branch*, Assistant Criminal District Attorney, both of Houston, and *George P. Blackburn*, State's Attorney, Austin, for the state.

BEAUCHAMP, Judge.

The appeal is from a conviction for rape, with the death penalty.

Appellant, in his brief, has given a very accurate and concise statement of the pertinent evidence in the case, a part of which we copy as follows, with the name of his victim omitted:

"The appellant, Ben Pickett, a negro, was indicted November 24, 1948, tried and convicted February 16, 1949, in the Criminal District Court of Harris County, of the rape of one * * * * * * *, an adult white woman. His punishment was assessed at death.

"The appellant's two motions to quash the indictment were denied February 15, 1949. Appellant's motion for new trial was denied February 25, 1949, and he appealed.

"The indictment charged that appellant on or about November 15, 1948, did 'ravish and obtain carnal knowledge of * * * * * * *, a woman, by force and threats without her consent.'

"Mrs. _____, a 54 year-old widow, testified that on the morning of November 15, 1948, she was alone in her home in Harris County, near Sheldon, Texas; that her 17-year old son, the only member of her family then living in her household, was away that morning at school; that her home was on what is known as the Beaumont Highway (Highway 90), sat back about a half block from the highway and was about a block from the nearest store; that as she was making up the beds that morning, a negro man, whom she identified as the appellant forced his way into her home through a rear door; that she screamed when she saw him in the house, but that he grabbed her around the neck and forced her against the wall; that he then took her by the wrist, and holding a white-handled pocket knife in his hand, threatened to kill her if she made further outcry; that he then took her into a bedroom in the front part of the house, and over her protests and entreaties, took off her 'panties,' threw her on the bed, got on top of her, and, threatening her with death if she resisted, had sexual intercourse with her; that there was penetration of the penis into the vagina; that it was only through fear of death that she yielded to the appellant; that he was on top of her on the bed for about ten minutes; that when he had 'finished' with her, he went out the rear door and she out the front to the highway, where she 'flagged' a car; that she told the occupant of the car what had happened to her and was taken in the car to a cafe operated by a Mr. H. C. Carroll about a half mile down the highway; that through the efforts of Mr. Carroll and others the law officers were summoned and began their investigation."

The prosecutrix also testified that a short time prior thereto she had seen appellant driving along the highway. She was walking and he asked her to ride with him. She refused and he drove on, but soon she found him stopped at the side of the road with a knife in his hand; that he was making threatening gestures when she was relieved from the situation by the approach of a passing car. It is probably sufficient to say that her testimony was very clear and definite. It was corroborated, to a large extent, by a number of witnesses. When she emerged from the house she had visible marks on the neck, showing that she had been choked, while she was in a very nervous and excited state.

Appellant took the witness stand in his own behalf and failed

to deny his identity. To the contrary, he gave intimations that he was there and that the incident did not constitute rape. Refusing to answer questions, it appears very clear that he was trying to convey the idea to the jury that he had been having relations with this white woman. He gave the name of a negro who he said introduced him to her, in a negro settlement. The prosecutrix denied this stoutly, denied that she knew the negro he said did the introducing, or that she even knew where the settlement was. The State later called the negro appellant claimed to have introduced them and this negro testified that such statement was entirely false; that he never introduced appellant to any white woman and that he did not even know the prosecutrix. It goes without saying that the jury wholly disbelieved defendant's story. If there had been any question about his identity, appellant in his own testimony removed that. His only defense seems to be the resulting intimation, from his refusal to answer direct questions about his statements, that it was an accustomed visit of his, with the consent of the prosecutrix.

Appellant has raised several questions, the first of which complains of the failure of the court to quash the indictment because there was no negro on the grand jury returning it. On this no evidence was introduced by appellant, other than that furnished him by the State. When the commission was instructed to draw grand jurors they were specifically charged by the court that they were not to discriminate against any race or nationality. The third man on the list of grand jurors was a negro. When the grand jury was called into service this negro was in the hospital sick and could not attend. The judge certified that in Harris County it has been the custom for years to have negroes on the grand jury and it was only the illness of the one summoned which prevented having one at the time. The bill of exception bears qualification to this effect. In the absence of some evidence substantiating his charge, it would hardly seem necessary to discuss the question of law which he attempts to present in his bills.

During the progress of the trial the State produced a written confession signed by appellant. His attorneys asked that the jury be retired in order that they may examine into the conditions under which this confession was taken. According to the testimony offered by the state it was a voluntary confession, in every way in compliance with the laws of the state. The defendant then asked that he be permitted to go on the witness stand and testify only on the subject of the confession.

The court declined to agree to so restrict his examination, but told him that if he took the witness stand he would go on it for all purposes. The record shows that after the state rested its case appellant did take the witness stand and testified before the jury that a certain deputy sheriff had forced him to sign a written confession; that he had beat appellant up and scared him so that he agreed to and did sign it. He further testified that shortly thereafter the district attorney took him to his office and that he there signed another confession, under the circumstances the state had already described, but that this same deputy sheriff was present and again threatened him if he did not sign the statement. This deputy was no longer in the service of the sheriff and was not present in court, but another deputy who was with him when the first confession was signed denied all of the things that appellant said about being forced to sign it. Several other witnesses who were present when the second confession, the one introduced in evidence, was signed denied any force and denied that the deputy sheriff referred to was even present in the district attorney's office. This raised an issue which the court properly submitted to the jury and they found against him. Complaint is still made before this court because the trial court did not permit him to testify in the absence of the jury. We see no harm in this. Such evidence would not have gone to the jury to help him in any way. The court was forced by the evidence which the state gave to submit an issue as to the voluntary nature of the confession, which he did in an acceptable manner. It would have been no different had he permitted the appellant to testify in the absence of the jury. No evidence was withheld from the jury because of it, and the issue submitted to them would not have been any different.

Bill of Exception No. 3 complains of the introduction in evidence of a knife and certain articles of clothing found in the home of appellant after his arrest. These answered the description which the prosecutrix had given of the knife and of the clothing worn by her attacker. The evidence was pertinent, but the complaint is that the state failed to prove that they had been obtained by legal search warrant. The state's testimony was to the effect that they secured a key from his wife, after his arrest, and entered the house with her consent. This was denied, but there is no complaint made about the issue on the subject as submitted to the jury. Furthermore, the defendant testified, without objection, to the same facts complained of in the bill. Under the uniform holdings of this court, such testi-

mony would nullify all objections, even had they in fact been supported.

Bill of Exception No. 5 complains of certain testimony and this bill is, in fact, refused by the court in that he says "No such objection was made, and therefore the court cannot certify that it was made."

Bill of Exception No. 6 complains of the refusal of the court to give an instructed verdict to acquit the defendant. The request was properly refused. A discussion of it is unnecessary.

We reiterate, the only defense offered by appellant was the mere resulting intimations that his act was with the consent of the prosecutrix and that he had had relations with her a half-dozen times. No jury, black or white, could be expected to believe such testimony under all of the facts of the case. The jury's verdict is supported by the evidence. We find no reversible error in the ruling of the court and its judgment is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

A witness in his own behalf, appellant testified fully before the jury as to the mistreatment he claimed to have received from the officers, as a result of which he made the confession used in evidence by the state. It follows, then, that he waived the objection he had theretofore made to the action of the court in refusing to permit him to testify to such facts in the absence of the jury and before the receipt in evidence of the alleged confession.

It appears that appellant made two confessions—one dated November 16, 1948, and the other dated November 17, 1948. Only the confession dated November 17, 1948, was introduced in evidence.

Appellant claimed in his testimony that the confession was obtained as a result of being beaten and threatened by Jake Colca, a deputy sheriff. It is admitted that Colca was present and was the person to whom the first confession was made. Leonard, the deputy sheriff who was present at the time of the making of the confession to Colca and signed same as a witness, did not deny that appellant was beaten or mistreated by Colca at that time. He appears not to have been interrogated relative

thereto, either by the state or the appellant. Colca was not called as a witness and therefore did not deny the allegation of mistreatment which the appellant claimed in his testimony.

Although appellant claimed that Colca was present at the signing of the second confession, or that dated November 17, 1948, and introduced in evidence, the preponderance of proof shows to the contrary.

Appellant insists that inasmuch as Colca did not dispute his claim of mistreatment, the confession is inadmissible, under the rule of construction as applied by the Supreme Court of the United States to the effect that where the undisputed evidence shows the use of physical violence, threats, and abuse upon a prisoner as a result of which a confession is made such confession is inadmissible.

We are familiar with the rule stated, but cannot bring ourselves to the conclusion that the facts bring this case within that rule, because, first, the facts, taken as a whole, show that no beatings or threats occurred, as claimed by appellant, and, second, we note that the witness Spencer, a witness to the signing of the confession offered in evidence, was permitted to testify without objection:

"I talked to the defendant and he told me the same thing that is in this statement. . . ."

It appears, therefore, that the facts set forth in the confession were, by this testimony, before the jury without objection.

We remain convinced that a correct conclusion was reached originally, and the motion for rehearing is overruled.

Opinion approved by the court.