DARIOUS GOLEMON V. STATE.

No. 25,504. January 16, 1952.
Rehearing Denied February 27, 1952.
Appellant's Second Motion for Rehearing Denied (Without Written Opinion) April 2, 1952.
Writ of Certiorari Denied by Supreme Court of the United States October 13, 1952.

Hon. P. C. Matthews, Judge Presiding.

*Pliny V. Myers*, and *Brann Fuller*, Houston, for appellant.

*George P. Blackburn*, State's Attorney, Austin, for the state.

DAVIDSON, Judge.

In a former appeal of the case growing out of this transaction, the judgment was reversed and the prosecution ordered dismissed (155 Texas Crim. Rep. 81, 230 S. W. 2d 816).

A new indictment was presented in the district court of Hardin County, Texas, on the 28th day of June, 1950, charging appellant with the malicious murder of Cloyce Eloise Twitchell. Upon the court's motion, the veune of the case was transferred to the district court of Chambers County, Texas. Subsequently, the venue was upon the court's own motion transferred to the district court of Liberty County, Texas, where trial was had resulting in appellant's conviction, with the death penalty assessed.

A statement of the facts touching the finding of the body of deceased is set forth in the companion case of Leviness v. State, No. 25,390, this day decided, (page 160, this volume), and will not be here repeated.

The chief contention upon this appeal relates to the receipt in evidence of appellant's confession over his objection that it was not freely and voluntarily made but was the result of fear, coercion, and physical abuse administered by the arresting officers and those having him in custody, and the failure of the arresting officers to promptly carry appellant before a magistrate—all of which appellant contends rendered the confession inadmissible in evidence under the statute law of this state and the due process clauses of our State and Federal Constitutions.

The use in evidence against one charged with crime of a coerced or forced confession constitutes a denial of due process. The later decisions of the Supreme Court of the United States attesting the rule are set forth in Prince v. State, 155 Tex. Cr. Rep. 108, 231 S. W. 2d 419, and will not be here repeated. In determining if a denial of due process has occurred in the particular mentioned, the Supreme Court of the United States arrives at a conclusion by an independent examination of and from the undisputed facts.

This court has not hesitated to reverse cases where the undisputed facts show a forced or coerced confession. Abston v. State, 136 Tex. Cr. Rep. 152, 102 S. W. 2d 428; Blackshear v. State, 130 Tex. Cr. R. 557, 95 S. W. 2d 960; Sigler v. State, 139 Tex. Cr. Rep. 167, 139 S. W. 2d 277.

The principal difference in the approach to a determination of the question by each of the courts lies in the fact that this court does not agree that force, coercion, and involuntariness are shown by some of the fact situations which have prompted the Supreme Court of the United States to conclude to the contrary. White v. Texas, 310 U. S. 530, 60 S. Ct. 1032, 84 L. Ed. 1342; Lomax v. Texas, 313 U. S. 544, 61 S. Ct. 956, 85 L. Ed. 1511; Ward v. Texas, 316 U. S. 547, 62 S. Ct. 1139, 86 L. Ed. 1663.

It is apparent, therefore, that in determining the admissibility of a confession claimed to be inadmissible because it was forced and involuntary, this court must first determine what we think the Supreme Court of the United States would con-

clude from an independent examination of the undisputed facts. The only yardstick by which we are to be governed in reaching such conclusion is, of necessity, an examination of the several fact situations as expressed in the decisions of that court and upon which the conclusion was predicated that the confession was or was not admissible in evidence. This court has not hesitated in giving due deference and controlling effect to the holdings of the Supreme Court of the United States where we have deemed those holdings to be applicable. Prince v. State, supra.

Such are the conditions under which we are to here reach a conclusion.

The undisputed facts touching appellant's arrest and the making of the confession appear to be:

The time fixed for the murder was September 28, 1948. The decomposed body of deceased, a white female, was, on October 4, 1948, found in a "pretty dense thicket" in the area known as "the Big Thicket." About one o'clock in the afternoon of June 28, 1949, appellant was arrested at Hempstead, Texas, without warrant of arrest, by Ranger Klavenhagen and Sheriff Kern of Houston, Harris County. The officers immediately placed appellant in an automobile and started with him to Kountze, the county seat of Hardin County, the county in which the body of deceased had been found. The officers began questioning appellant and ascertained from him information that one "Frog," or Leviness, was implicated with him in the alleged murder. With this information they decided to drive or go by the state penitentiary at Huntsville to investigate the penitentiary records as to Leviness and appellant. Upon arriving at Huntsville appellant was placed in the penitentiary, where he remained for a few hours while the officers checked the records, at the completion of which appellant was taken to Kountze and there placed in jail about dark of the day of his arrest.

The officers, after placing appellant in jail and in the custody of the sheriff of Hardin County, set out for Orange, Texas, where they arrested Leviness. The officers, with Leviness, returned to Kountze about midnight of the night of June 28, 1949. Appellant and Leviness were thereupon brought into what is referred to as "Sheriff Lindsey's parlor" at the jail for questioning.

Appellant and Leviness, in the presence of each other, were

questioned by the officers until "about daylight the next morning," when appellant signed a statement. During the questioning, six peace officers were present, including two Texas Rangers and three sheriffs. This statement, which will be referred to as the first statement, was not offered in evidence.

Following the signing of the first statement, appellant and Leviness were carried to the scene of the homicide to search for the gun which appellant appears to have stated in the course of his questioning by the officers had been used in the homicide. Appellant showed the officers the place where he said he had hidden the gun, but it could not at that time be found. Appellant was then carried to Beaumont, where he was alleged to have purchased a gun at a pawn shop. The pawn shop keeper could not identify appellant as having purchased a gun from him but did produce and identify a purchase record showing that he had sold a gun to a person using a name other than that of the appellant, appellant having advised the officers before or at the time of the making of the statement that, using a fictitious name, he had purchased a gun at a place in Beaumont. Proof by a comparison of handwriting was introduced which tended to show that appellant had in fact signed the purchase record and received a gun or pistol.

After a futile search for the pistol, on the morning of June 29, the officers sent to Houston for a mine detector. On July 1, by and with the aid of the mine detector, the gun was found which corresponded to that which had been purchased at the pawn shop and described by appellant in his answers to the questioning of the officers.

On July 5, about a week after the making of the first statement. Hightower, the then prosecuting attorney, went to the jail for the purpose, he says, of interviewing appellant and Leviness, his alleged co-actor, and talk over with them the statements or confessions they had theretofore made in view of having them verify said statements. In furtherance of this purpose, Hightower had both appellant and Leviness brought from the jail into the sheriff's office and there in the presence of prosecuting attorneys and peace officers—at least one of whom was present when the first statement was made—appellant and Leviness were questioned, with the first statement before them, in each other's presence. In several instances, the answers given were verified or challenged by the other.

At the expiration of this interview, a second statement or confession was made by appellant, which was the statement introduced in evidence in this case. It is well to note in this connection that Hightower testified that appellant's second statement contained material changes from those contained in the first statement. Just what those changes were the record does not reflect. According to Hightower's testimony, as well as that of other witnesses, the second statement or confession was freely and voluntarily made and in compliance with the provisions of Art. 727, C. C. P.

It would serve no useful purpose to here set out the confession as introduced in evidence. It is sufficient to say that it showed appellant guilty of the offense charged, without which the sufficiency of the state's case to support the conviction would be doubtful.

Appellant, testifying as a witness in his own behalf, challenged the voluntariness of the confession and testified that it was made only as a result of threats, fear, coercion, and physical violence administered by the arresting officers and those who had him in custody.

All the officers whom appellant implicated as having administered the physical violence as well as threats and coercion testified denying appellant's testimony and asserting that the confessions were freely and voluntarily made.

In accordance with established precedent in this state, the trial court submitted to the jury the disputed issues of fact touching the voluntariness of the confession and instructed the jury to the effect that if they entertained a reasonable doubt as to whether the confession was freely and voluntarily made to acquit the appellant.

The verdict of the jury constitutes a finding that the confession was voluntarily made in accordance with the statute law of this state. (Art. 727, C. C. P.)

Appellant's accusation of physical violence and threats by the officers, being disputed, is therefore not to be here considered in determining the admissibility of the confession.

It is insisted that the acts of the officers in questioning appellant in the manner, place, and for the length of time admitted

by them, as well as that of carrying appellant at night into the woods and to the scene of the disposition of the body of deceased, as admitted by them, rendered the confession involuntary and its use in evidence a violation of due process.

It is well established that when a prior confession of an accused is obtained as a result of improper influences, subsequent confessions will be received only when it is made to appear that the improper influences exercised in obtaining the first confession did not enter into or influence the making of the subsequent confession. Holt v. State, 151 Tex. Cr. R. 399, 208 S. W. 2d 643, and authorities there cited.

In this connection, it must be remembered that the mere questioning of a suspect while under arrest or in custody is not prohibited by either the common law or due process. Lyons v. Oklahoma, 322 U. S. 596, 64 S. Ct. 1208, 88 L. Ed. 1481; Lisenba v. California, 314 U. S. 219, 62 S. Ct. 280, 86 L. Ed. 166.

To invalidate the confession as a violation of due process there must exist facts showing more than that the confession was the result of questioning by the officers.

We are familiar with the decisions of the Supreme Court of the United States holding inadmissible confessions used in obtaining convictions in the state courts. These need not be here set forth or discussed in detail. It is deemed sufficient for instant purposes to say that in none of those cases do we find any expression or conclusion that would lead us to conclude that said court would hold that the use of the instant confession against appellant constituted a violation of due process.

In Newman v. State, 148 Tex. Cr. R. 645, 187 S. W. 2d 559, we find facts similar in some respects to these which are here presented. At least we are unable to conclude that the instant facts go any further toward invalidating the confession as violative of due process than those shown in the Newman case. We affirmed the Newman case as against the contention that the confession was involuntary. The Supreme Court of the United States denied a writ of certiorari in that case. 326 U. S. 772, 66 S. Ct. 174, 90 L. Ed. 466.

We are constrained to conclude that the instant facts do not authorize a conclusion by this court that the use in evidence of the confession against appellant constitutes a violation of

due process, or that the Supreme Court of the United States would hold to the contrary.

Having reached the conclusion just expressed, we next test the admissibility of the confession under the law and decisions of this state.

Appellant insists that Arts. 217 and 727a, C. C. P., sustain his contention. The articles read as follows:

"In each case enumerated in this chapter, the person making the arrest shall immediately take the person arrested before the magistrate who may have ordered the arrest, or before the nearest magistrate where the arrest was made without an order."

"No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."

Appellant cites in support of his contention the so-called McNabb rule (McNabb v. U. S., 318 U. S. 332, 87 L. Ed. 819, 63 S. Ct. 608) holding "that a confession is inadmissible if made during illegal detention due to failure promptly to carry a prisoner before a committing magistrate, whether or not the 'confession is the result of torture, physical or psychological . . .'" Upshaw v. United States, 335 U. S. 410, 93 L. Ed. 100, 69 S. Ct. 170. The McNabb rule arose and was announced by the Supreme Court of the United States through the power of that court to supervise "procedure and practices of federal courts in the trial of criminal cases," which power is not vested in that court over state criminal trials. Gallegos v. Nebraska, 96 L. Ed., advance opinion at page 88. It is apparent, therefore, that the so-called McNabb rule is not controlling in state trials and is not authority for a determination of the question before us.

In Dimery v. State, 156 Tex. Cr. R. 197, 240 S. W. 2d 293, we expressly refused to apply the so-called McNabb rule to trials in this state and there held that in order for the failure to carry an accused before a magistrate (as required by Art. 217, C. C. P.) to invalidate a confession it was necessary that there be shown that such failure, in some manner, caused or contributed to bring about the confession. We fail to find any fact in the

instant case that would render inapplicable the rule announced in the Dimery case.

It is further insisted that the failure to carry appellant before a magistrate constituted a violation of the law of this state, and therefore rendered the confession inadmissible under the provisions of Art. 727a, C. C. P., and in support of this contention appellant cites Colley v. State, 143 Tex. Cr. R. 390, 158 S. W. 2d 1014, wherein we held that a confession was inadmissible where the undisputed facts showed that the officers having the accused in custody were guilty of violating Art. 1157, P. C., prohibiting the infliction of physical or mental pain upon a prisoner to secure a confession. The conclusion was reached notwithstanding the fact that, as a result of the confession, facts were found to be true which conduced to establish the guilt of the accused, as provided in Art. 727, C. C. P.

We are aware of no statute that makes it a violation of the law—that is, a criminal offense—for an officer to fail to perform the duty imposed by Art. 217, C. C. P., to carry one arrested without warrant before a magistrate. It is apparent that the rule announced in the Colley case has no application here.

Finally, it is apparent from this record that appellant communicated to the officers, during questioning, facts conducing to establish his guilt which were incorporated in the first statement, as a result of which the pistol used in the murder was discovered. Under the express provisions of Art. 727, C. C. P., the first as well as the second confession was admissible in evidence against appellant.

It follows that the use in evidence of the confession in this case was authorized and warranted by the statute law of this state, and the disposition we make rests thereon, without reference to due process of law.

Appellant's ownership and connection with and the use made of the pistol found by the officers were fully shown in the confession. Appellant's independent objection to receipt in evidence of such proof was thereby rendered untenable, because the same facts were properly in evidence from another source—that is, the confession.

Appellant's exception to the change of venue from Hardin County to Chambers County was rendered without merit upon

the subsequent change of venue from Chambers County to Liberty County.

The record fails to reflect any evidence that would warrant the conclusion that the trial court abused his discretion in refusing to change the venue from Liberty County, and no error is shown thereby.

No reversible error appearing, the judgment is affirmed.

Opinion approved by the court.

ON APPELLANT'S MOTION FOR REHEARING.

MORRISON, Judge.

Appellant urges us to reconsider our original holding in the light of Article 1, Section 9-19, of the Bill of Rights of the Constitution of Texas. This, we have done.

His principal contention now, as we see it, is that, since the original arrest of Golemon in Hempstead was without a warrant, the same constituted false imprisonment, as denounced by our Penal Code, and that, since the confession was secured while appellant was so falsely imprisoned, the same became inadmissible by virtue of Article 727a, C. C. P., which makes inadmissible evidence obtained by means of a violation of the Constitution or laws of Texas or the Constitution of the United States.

An analysis of this contention involves an examination of what we consider due process of law, as is guaranteed by both our State and Federal Constitutions.

In order to hold the confession inadmissible, we must be convinced from the record that the failure of the officers to secure a warrant before arresting Golemon, in itself, contributed in some way to the securing of the confession. That is, we must be convinced that there was a causal connection between their failure to secure a warrant and the securing of the confession. Dimery v. State, 155 Tex. Cr. R. 197, 240 S. W. (2d) 293.

The mere fact that the officers had appellant in their custody is not enough. It must be shown that their failure to have secured a warrant before so taking him into custody materially altered the situation to appellant's prejudice. We must ask our-

selves, "Would the situation have been any different if they had first secured a warrant?" If we find that it would, then the confession goes out of the case. This question of causal connection is easily and practically answered in cases where force is used by officers in securing a confession. There, we conclude that the confession would not have been forthcoming had it not been for the coercion. But, here, it would certainly seem hypercritical to say that the mere failure to have a warrant in their hands was the cause of the confession being made. An accused certainly knows when he is exposed to brutality, but he does not necessarily know whether or not an officer has a warrant for him when he is arrested. By what stretch of the imagination could we say that the non-possession of a warrant in the hands of the arresting officer actually, in itself standing alone, constituted a compelling force which brought its influence to bear on the mind of appellant and thereby became a causal factor in bringing about a confession?

We conclude that the officer's failure to have a warrant for appellant's arrest in nowise contributed to the securing of the confession.

Appellant's next contention is that the undisputed facts herein bring this case within the rule expressed in Ward v. Texas, 144 Tex. Cr. R. 442, 316 U. S. 547, 86 L. Ed. 1663.

We will endeavor to discuss the facts in each case in order to determine if appellant's contention is well taken. In the Ward case, the accused was arrested in Titus County, where the offense had been committed, and taken by the officers from there, east to Morris County, then southwest to Camp County, then south to Upshur County, then southwest to Smith County, then southwest to Henderson County, all the time getting farther away from where the offense had been committed. At each county seat, he was placed in jail.

In the case at bar, appellant was arrested in Waller County and, from there, taken northwest to Walker County, where his criminal record was checked, and then southeast to Hardin County, all the time getting nearer the place where the offense was committed.

In the Ward case, the movements described above consumed the time from Tuesday night until the following Friday afternoon.

In the case at bar, the movement consumed, according to appellant, approximately three and one-half hours.

In the Ward case, the confession obtained at the end of this movement from one strange town to another, and three days of questioning, was relied upon by the state to make out its case.

In the case at bar, a confession was made by appellant the morning following his arrival in Hardin County, and, immediately thereafter, a complaint charging him with murder was filed, and a warrant for his arrest issued. Appellant contends that he was physically mistreated by the officers, which caused him to sign the confession, all of which was denied by those who had him in custody. *But this confession was not introduced in evidence.*

A week later, appellant was interviewed by the district attorney and made the confession which was relied upon by the state in this case. Appellant does not claim, nor is there any evidence, that he was in any way mistreated during the week following the taking of the first confession and the taking of the second. The only claim of mistreatment or coercion leveled by appellant against this second confession is that, immediately prior to the time the same was made, the sheriff threatened to repeat the mistreatment of a week before. This was denied by the sheriff and, being resolved against appellant by the jury's verdict, passed out of the case. A complaint charging appellant with murder had been filed approximately a week before this confession was made, and, according to appellant, the district attorney who took it "treated him nice" and "talked in a friendly way about my family."

We remain convinced that the undisputed evidence does not reflect that the confession used in evidence was subject to the objection leveled by the appellant.

Appellant complains of the action of the court in changing the venue from Chambers County to Liberty County.

The basis of his contention seems to be predicated upon one sentence contained in appellant's confession as follows: "Frog and myself had planned to rob the Hull bank at Hull, Texas," which is in Liberty County.

Appellant has not shown in any way that a prejudice existed

against him in Liberty County or that such a prejudice actually found its way into the jury box of the jury that tried the accused. No error appears until this has been shown. Jones v. State, 156 Tex. Cr. R. 248, 240 S. W. (2d) 771.

Appellant's last complaint grows out of the fact that a letter written by him in jail was used as a basis for comparison with the records of the pawn shop where he bought the pistol used in the murder under a fictitious name.

In Ferguson v. State, 61 Tex. Cr. R. 152, 136 S. W. 465, we held an appearance bond signed by accused, while under arrest and without any notice that it might be used for any other purpose than as a bond, might be used as a basis for handwriting comparison. The Ferguson case would authorize the admissibility of the evidence herein. It will be noted that the letter itself was not incriminatory. See Jones v. State, 155 Tex. Cr. Rep. 475, 243 S. W. (2d) 848.

Remaining convinced that we properly disposed of this cause originally, appellant's motion for rehearing is overruled.