# W. M. HART v. THE STATE.

## No. 5626. Decided March, 3, 1920.

**1.—Murder—Sufficiency of the Evidence—Requested Charge.**

Where, upon trial of murder and a conviction for that offense, the evidence sustained the same, there was no error in refusing a requested charge to return a verdict of not guilty.

**2.—Same—Motion for New Trial—Bill of Exceptions.**

Where the bill of exceptions containing the evidence aduced on motion for new trial was filed after the adjournment of the term of the trial court, the same cannot be considered on appeal.

**3.—Same—Evidence—Telephone Call—Identification.**

Where defendant objected to the admission of testimony that he called the police station over the telephone in order to reach the officers, because he was not identified, but the record showed that defendant admitted this matter, there was no error, and the conflict of testimony as to what was said in said call is a matter for the jury to decide.

**4.—Same—Evidence—Search for Jewelry—Motive.**

Upon trial of murder, there was no error in admitting testimony with reference to the jewelry found in the room where the killing occured and the value of the same, the search for it being made in the presence and at the request of the defendant, and this although he may have been under arrest; the jewelry being found and there being a question that on account of defendant's financial condition he killed the deceased to obtain this jewelry for the relief of same; besides, this was a physical fact subject to investigation.

**5.—Same—Evidence—Circumstances Attending the Homicide.**

Where, upon trial of murder, the defendant claimed accident or self-inflicted injury there was no error in admitting testimony that there were marks of violence on the body of the deceased.

**6.—Same—Evidence—Photographs—Condition of Room.**

Upon trial of murder where the homicide or death of the deceased occurred in a certain room which defendant and deceased were occupying at the time, there was no error in admitting testimony that photographs were taken of this room two or three days after the occurence, and to admit these in evidence, the change of said room being explained and that otherwise it was in the same condition as at the time the body of the deceased was found therein.

**7.—Same—Evidence—Rebuttal.**

Where, upon trial of murder, a physician was introduced as a witness by defendant and gave favorable testimony in regard to the dislocation of the left shoulder of the deceased, there was no error to show on cross-

examination that this shoulder could have been relocated as was testified to by the physician for the State.

### 8.—Same—Evidence—Defendant's Financial Condition—Motive.

Where, upon trial of murder, the State's theory was that defendant killed deceased to repossess himself of some valuable jewelry he had given her, there was no reversible error ·on cross-examination of defendant to show his financial condition at the time and that he was in straightened circumstances.

### 9.—Same—Evidence—Credibility of Witness.

Upon trial of murder, there was no error in permitting the State to show by the defendant on cross-examination that he was indicted in nine felony cases of embezzlement.

### 10.—Same—Evidence—Value of Jewelry.

Upon trial of murder, there was no reversible error in permitting the State to introduce testimony that defendant paid large sums of money for the jewelry which he gave to the deceased; besides the bill of exceptions were defective.

### 11.—Same—Sufficiency of the Evidence—Accident—Suicide.

Where, upon trial of murder, the defendant claimed accident or suicide but the evidence showed that the jury was justified in finding that her death was by the hands of the defendant, there was no reversible error in finding him guilty of murder.

Appeal from the Criminal District Court of Harris. Tried below before the Hon. C. W. Robinson, judge.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states·the case.

*Heidingsfelders,* for appellant.—On question of telephone message and identification: Walker v. State, 50 Texas Crim. Rep., 221; Collins v. State, 77 Texas Crim. Rep., 156, 178 S. W. Rep., 345.

*Alvin M. Owsley,* Assistant Attorney General, *E. T. Branch,* District Attorney, for the State.—On question of other offenses showing moral turpitude: Glasgow v. State, 210 S. W. Rep., 957; Hines v. State, 202 S. W. Rep., 91; Black v. State, 41 Texas Crim. Rep., 185.

On question of marks of violence on body of deceased: Pilcher v. State, 32 Texas Crim. Rep., 557.

On question of photograph: Mauney v. State, 210 S. W. Rep., 959; Clark v. State, 210 S. W. Rep., 544.

DAVIDSON, PRESIDING JUDGE.—Appellant appeals from a conviction of murder in which the verdict of the jury allotted him ten years in the penitentiary.

The facts show that appellant was a married man with a wife and two children; that he had not been living with them for several months prior to this homicide. This was practically an abandonment of his family and an association in illicit relations with deceased. He had procured a house and he and deceased were occupying it. They were at this place on the night of the homicide. After taking their evening meal the deceased took a bath and retired for the night. He did not retire. About midnight he says he went to her bed and laid down undressed, reclining on his right elbow. They were having a conversation with reference to a pistol she had been learning how to handle or use, an automatic pistol. He inquired about the pistol and she informed him it was under the head of the bed from where she got it. She had it under the sheet and he says the pistol was discharged resulting in her death. The ball went through the left breast just above or near the apex of the heart, coming out under her left shoulder close by the spinal column. He was shot through the left hand or wrist. This is the arm he says he had under her at the time the shot was fired. There was no evidence on the front of the gown she was wearing that the bullet had entered it, and there was no indication of powder burns either on the bed clothing or on her body. He called several parties over the phone, but failing to get them he secured a service car and went from that point to see a friend by the name of Artz, being about six miles distant in another part of the city of Houston, and told him of the occurrence and returned. Upon reaching home, following the advice of his friend, he phoned the officers notifying them of the death of the deceased. They came out directly, made examination of the premises, and especially of the room and the bed which contained the body of deceased. There is a great deal of testimony with reference to what occurred and these various matters, which we deem unnecessary to state. Appellant made a confession, which is brought within the statute. There was no legal question raised as to its admissibility. From the statement of appellant and his testimony there seems to have been at least two theories, one that the woman committed suicide and the other that she accidentally discharged the pistol which killed her. The State's theory was that appellant shot and killed her.

An exception was reserved to the charge of the court because it failed to instruct the jury to return a verdict of not guilty for want of sufficient evidence. Without going over the testimony, for it is very voluminous, we are of the opinion that the verdict of the jury was authorized by the facts. The evidence, we think, excludes the idea that she shot herself either from the viewpoint

of suicide or accident. · The physical facts seem to preclude the idea of her wounds being self-inflicted.

There are quite a number of bills of exception reserved. The first bill was reserved to the overruling of the motion for new trial in which it was sought to perpetuate evidence with reference to the conduct of the jury. This bill of exceptions cannot be considered, as it was filed after the adjournment of the term of court.

There were bills of exception reserved to the admission of the fact that appellant called the police station in order to reach the officers. The principal objection, it seems, to this was these calls did not identify appellant as being the party who was doing the talking. He stated to them when he called that his name was W. M. Hart. Had the testimony closed at this point the objection would doubtless have been well taken, as the officers could not identify the voice and neither could the operator at the phone office, but appellant in his confession stated that he called them, and also testified to the fact on the witness stand. This is sufficient identification of appellant as being the man who made the call and notified the officers of the death of the woman. There is a conflict between appellant's testimony and that of the operator and the police officers as to what was said over the phone. This was a contradiction in the evidence on that point which is relegated for a decision by the jury. The veracity of these witnesses on the correctness of their testimony is a matter for solution by the jury. It is not a ground of objection that there is a difference between the witnesses as to what was said between them. We think this testimony was properly admitted as shown by the record.

There are bills of exception reserved to the evidence in regard to the jewelry found in the room where the killing occurred, and the value of it. The search for it was made in the presence and at request of appellant when he may have been, if not actually, under arrest. He had given her jewelry which he himself testifies was of costly value; one piece he states he paid $550 for and another $500, and there was other jewelry of less value. While the officers were in the room where the homicide occurred, at appellant's request this jewelry was sought, and after looking in various places in the room it was found. Appellant's request seems to have been based upon the idea that if the jewelry was left there, he being taken away and the house left unoccupied, some one would find and take it. He testified fully with reference to the jewelry and what he paid for it, in addition to his request that the jewelry be found. Whether he was under arrest or not, under the circumstances, we think would be immaterial. This was a matter of investigation. There was a theory by the State that on account of his financial condition he killed the woman to obtain this jewelry for relief of financial stress. This investigation and discovery tended to, if it did not in fact, disprove this contention of the State. But

in any event, any physical fact about the room or anything that might throw light upon the transaction, discoverable in or about the room, would be proper testimony, and the fact that appellant was under arrest at the time of the examination of the room would not prevent search for the jewelry and the admission of evidence in regard to the search for and finding it. He seems to have relied upon it as a fact which did not show any reason why the girl was killed, as he had from about midnight to four o'clock in the morning in which he could have gotten rid of the jewelry or appropriated it. In any event the fact that the jewelry was there, or any other thing in the room might have been investigated and search instituted and the fact used in the development of the case. These were but physical facts that existed whether defendant was under arrest or was not under arrest.

There was a bill of exceptions reserved to evidence showing that there were marks or spots on the body of deceased, described as being on the right and left shoulders, right breast and left forearm, all of which were about the size of a nickel. These were physical facts on the body and were the subject of investigation and testimony before the jury. These were facts that went to solve or tend to solve the condition of the body at or about the time of the death. From these the jury might draw their conclusion as to whether there was a struggle or how the spots came upon the body.

There were photographs taken of the room two or three days after the homicide and introduced in evidence, and used by the witnesses in explaining the condition of the room as found by the officers when they reached the house. This character of testimony is always admissible. Appellant stated as a ground of objection that the room was not in the same condition as it was when the body was found upon the bed. This was not stated as a fact, but if it was stated as a fact that the bed had been changed and the room to some extent, this would make no practical difference where the photographs were used by witnesses in explaining the condition and physical facts in the room. The body of deceased had been moved it seems when the picture was taken. These changes were fully explained by the witnesses. The bed had been turned down by the justice of the peace the night of the homicide and seems to have been in that condition at the time the photograph was taken. Among other reasons they moved some of the bed clothing searching for the jewelry at appellant's request. There was also a piece of furniture—a sort of wardrobe trunk—that had been removed from the room, which is explained in the record, otherwise the room seems to have been in the same condition as at the time the body was in the bed. Appellant's witness, a doctor, was introduced and gave some favorable testimony in regard to the dislocation of the left shoulder of deceased. This was shown to be a fact and that it had been replaced by another physician. The State then drew from

him the fact that it was not an unusual thing that the shoulder could be re-located as was testified by the physician for the State. Appellant objected to this statement that it was not an unusual thing that a shoulder could be re-located or re-adjusted as testified by the other physician. This testimony was legitimate and proper.

Appellant was questioned while upon the witness stand about his financial condition. It was elicited from him that he was supporting his wife and children, had a room at the Cotton hotel for which he was paying sixty dollars a month, and was drawing a salary from the Pillot Book, Store of $175 a month, and had given the deceased the jewelry which has been mentioned. As the case was tried and developed this was properly admitted.

Appellant objected to the following question asked appellant on his cross examination: "How much did your room at the Cotton hotel cost you?" Objection was made to that character of interrogation for the reason that it was irrelevant and immaterial to any issue in the case, and did not tend to prove the guilt or innocence of the defendant for the offense of which he was being tried. This being overruled, he stated he was paying $60 a month. We think the bill is too indefinite, but if full and complete we think the financial condition of appellant under this record would be admissible; at least would tend to throw light upon the transaction. The motive for the crime is not plainly shown. In fact the killing is unexplained. He denied the killing, contending that it was an accident or suicide. Anything that would tend to prove a motive or reason why his statements were not true, or why he would have desired to get rid of her, would be appropriate and admissible. If he killed her to secure the diamonds and jewelry he had given her it would tend to prove a motive. The expenditure of the money by him, it occurs to us, under the circumstances would be admissible. It might tend to show financial embarrassment, and the heavy expenditure of money may have led to a desire to get rid of the deceased. What is here said may be said also of other bills in reference to the question of his heavy expenses.

Another bill was reserved to the action of the court permitting the State to prove by appellant while on the stand that he was indicted in nine felony cases of embezzlement. He did answer that such was the fact, but further that he was not guilty. The fact that he was indicted for crimes of that character has been held by this court in a great number of opinions to be admissible.

Another bill of exceptions recites that appellant objected to the State being permitted to prove that he paid $550 for a ring and $500 for a brooch which he gave to deceased. The objection was that it was immaterial and irrelevant and inadmissible for any purpose, and had a tendency to divert the minds of the jury from

the real issues. These objections are very general. At least as against general demurrer such evidence is usually admissible.

It is not thought necessary to review the testimony. Appellant's contention was that he did not himself kill the woman; that she did it. These issues were submitted to the jury favorably to defendant. The jury found against him. As this record discloses the case, the jury was justified in arriving at the conclusion that deceased did not take her own life, either as a suicidal act or from accident. The circumstances and the physical facts would indicate that she came to her death at the hands of appellant.

Finding no reversible error in the record the judgment is affirmed.

*Affirmed.*