John Oscar YOUNG, Appellant,

v.

The STATE of Texas, Appellee.

No. 38726.

Court of Criminal Appeals of Texas.

Dec. 15, 1965.

Rehearing Denied Feb. 16, 1966.

J. Paul Pomeroy, Jr., O'Brien Stevens, Houston, for appellant.

Frank Briscoe, Dist. Atty., Samuel H. Robertson, Jr., Carl E. F. Dally, Charles E. Bonney and Gus J. Zgourides, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Judge.

The conviction is for robbery with firearms; the punishment, death.

This is a companion case to that of Sellars v. State, Tex.Cr.App., 400 S.W.2d 559, and Hoover v. State, Tex.Cr.App., 390 S.W.2d 758.

The facts relating to the robbery and the torture inflicted upon Mr. and Mrs. Schepps and their employee, Mrs. Tuck, are set out at length in the companion cases and need not be restated.

The appellant did not testify before the jury. His confession was introduced in evidence as State's Exhibit No. 17. Omitting the statutory warning, it reads in part:

"Around March 5, 1964, I got some information that a bookie by the name of Scheppes lived on Memorial Drive in Houston and that he had $300,000 stashed in the House. For the next two or three nights, I went out to this place and looked it over. Sammy Spivey came by my house and I told him about it and he agreed to go with me on it and I called Calvin Sellers on the Telephone and he agreed to go with me on it. They went with me to look the place over. On March 11, 1964, I met Calvin Sellars at a drive-in on Main Street. Sammy Spivey was with me and we got into Calvin's Red and White Mercury and drove out to this place. We parked on the street that runs alongside this house. We cut through some bushes and went to the side door. Sammy and I went in the side door and Calvin went to the Garage and got the other w.man. When Sammy and me got upstairs, we through down on the woman and Scheppes and got them on the floor and tied them up with adhesive tape. We then started looking for the money. We found some money right away, but nothing like what we had heard would be there. I twisted the woman's arm a little, but she wouldn't tell me where the money was. Calvin came in with this other woman and we tied her up. Calvin took a lamp and jerked the cord from it and plugged the cord into the wall and shocked the woman some, but she still wouldn't tell us where the money was. I was looking for the money and a lot of stuff went on in the room where they were at that I don't know about. Sammy had a sawed off shotgun. I was carrying a .44 magnum

and Calvin had an automatic. We were out at this house about an hour or an hour and a half. When we couldn't find anymore money, we left. We went back to my truck and rather to Sammy's car and Sammy took me home and I went to sleep. I got about $1100 dollars for my part in this * * *. The next morning, I went to Conroe, Texas, and I read in the papers up there about the robbery we had done and I decided that I had better get rid of my pistol. * * * I had a wool mask pulled over my face during this robbery. It was something like you get out of a Surplus Store. * * * When we got ready to leave this place, I thought this woman was going for something under the bed, so I shot her in the leg. I also shot another couple of times in the wall while I was there, trying to scare this woman into telling us where the money was. I owed Sam Hoover $1200 * * * and I give him the $1100 dollars I got out of this robbery * * *.

"While we were still in the house and we couldn't find the money, I called Sam Hoover to find out what to do. I called him at GR-2-7700 and told him we couldn't find the money and he said he would call back. In a few minutes he called back. He told me to look in the deep freeze. He said if it wasn't in the deep freeze, to go ahead and leave. After talking to him, I went down to the kitchen and looked through the deep freeze, but there wasn't any money there and thats when we left. I ask___ Sam Hoover on the telephone whether we should leave the people tied up or not and he told me to go ahead and leave them tied up.

"Tonight, I was at the Turner Motel on Telephone road and the police came out and arrested me and brought me to the police station. I decided to tell them about what I had done and they asked me to make a statement, which I am doing now.

"I can read and write and I have read the above statement, which is mine, and it is true and correct to the best of my knowledge."

Appellant's first ground for reversal relates to the court's failure to charge the jury that the witnesses Roach and William J. Lyons were accomplice witnesses whose testimony required corroboration, or to submit to the jury the question of whether they were accomplice witnesses.

Lyons testified that in March, 1964, he came to Houston from his home in San Antonio at Sam Hoover's request; that he saw the appellant in Hoover's outer office; that after the appellant went into the inner office and after a time came out and left, he saw Hoover and had a conversation with him during which Hoover showed him a large diamond ring, a man's ring—and later showed him a woman's broach or pin—"all yellow gold and had diamonds and pearls embedded in it and a flowery design."

He further testified that subsequent to his return to San Antonio he was contacted by the City of Houston Police Department; that Hoover came to San Antonio the last day of May and that following a conversation with him he left the state, using money he got from Hoover.

An emerald-cut diamond, introduced in evidence as State's Exhibit No. 31, found in the bottom dresser drawer of Sam Hoover's bedroom on March 19, 1964, was identified by Mair Schepps as that taken from him during the robbery.

The record does not reflect that Lyons had been promised money with which to leave the state for the purpose of evading the giving of testimony against Hoover or his co-indictees.

Billy Roach testified that he saw appellant at his sister's house, adjacent to the Lakeside Lounge, on or about March 14, 1964; that appellant asked him to keep "a sack of guns for him"; that he agreed upon condition that appellant give him one of the guns and he did. He identified the bag as similar to State's Exhibit No. 27, and

testified that it contained "a nail bar, a .44 Magnum, a sawed off shot gun, a .38 Chrome plated police revolver, a nine milli-meter automatic that was a foreign made gun * * *." Also there were dark blue masks—"white on the inside with some straps that looked like they would go around your head. I left them all in the sack and put them in a drawer in a back dresser. * * * My sister didn't know they were in the house. Nobody knew it but he and I."

He further testified that the Magnum (State's Exhibit No. 28), the sawed off shot gun (State's Exhibit No. 20), and the masks (State's Exhibit No. 21) appeared to be those that were in the sack.

The sack or bag containing the guns and masks which appellant left with Billy Roach on March 14 were recovered in a search of the Lakeside Lounge on March 19.

Also there was evidence introduced by the state to the effect that the Magnum .44 was used by appellant in the Schepps rob-bery. Officer Hadley testified that he re-covered from appellant's pocket a spent hull from a .44 caliber bullet; Officer Hodges testified that he recovered two spent slugs from a .44 caliber revolver, one from the wall of the baby's bedroom and one in the master bedroom of the Schepps residence. Officer Balson gave expert testimony that these slugs were fired from the .44 Magnum identified as State's Exhibit 28.

We do not construe the evidence as show-ing knowledge on the part of the witness Billy Roach or the witness Lyons that the robbery of Schepps had been committed or that Young or his co-indictees had com-mitted such robbery.

We find no error in the court's fail-ure to charge or submit an issue as to whether witness Roach or Lyons was an ac-complice. Morgan v. State, 171 Tex.Cr.R. 187, 346 S.W.2d 116, 118; Dent v. State, 43 Tex.Cr.R. 126, 65 S.W. 627, 630; Clark v. State, 159 Tex.Cr.R. 187, 261 S.W.2d 339.

Appellant next complains that the court erred in refusing to grant his motion, made prior to the trial and renewed during the trial, for the production of grand jury min-utes.

There is no showing that any transcript of grand jury testimony was exhibited in the jury's presence or used by any witness.

The court did not err in overruling such motions. Bryant v. State, Tex.Cr. App., 397 S.W.2d 445; Nisbet v. State, 170 Tex.Cr.R. 1, 336 S.W.2d 142, cert. denied, 363 U.S. 829, 80 S.Ct. 1601, 4 L.Ed.2d 1524; Hanes v. State, 170 Tex.Cr.R. 394, 341 S.W. 2d 428; Gaskin v. State, 172 Tex.Cr.R. 7, 353 S.W.2d 467; see also Pittsburg Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323.

Our holding that appellant was not en-titled to inspection of the grand jury min-utes disposes of his further contention that such minutes should have been sealed and made available so that same could be at-tached to his bill of exception.

The overruling of like motions for the production of "documents, statements, tests, examinations and evidence" before, during and after trial show no error, it ap-pearing from the record that any previous written statement shown by the evidence to have been made by a witness who testified for the state was available and upon re-quest was turned over to appellant's counsel for cross-examination and possible use for impeachment purposes. Appellant was not denied inspection of any statement or docu-ment exhibited or used in the jury's pres-ence.

Appellant's next complaint relates to the admission in evidence of his confession.

The evidence reflects that appellant was arrested on March 18, 1964, in a motel room about 1 o'clock A.M. He was taken to the police station, arriving there at ap-proximately 2 o'clock A.M. After being warned by Officer B. K. Johnson as re-quired by the statutes of Texas, appellant gave the statement to Officer Johnson

which was introduced in evidence and the officer reduced it to writing. Appellant then read the statement and signed it in the presence of two witnesses.

Officer Johnson testified that the statement was completed and signed about 2:30 A.M., approximately 30 minutes after he first saw appellant at the police station.

Appellant was not taken before a magistrate prior to making the confession. At the time of his arrest he was not advised of his right to counsel and Officer Johnson did not advise him that he could consult an attorney. However, appellant at no time made any request for counsel.

■ The record shows no unreasonable delay in taking appellant before a magistrate between his arrest, about 1 o'clock A.M., and the signing of his confession about 2:30 A.M. Johnston v. State, No. 38,-181, Tex.Cr.App., 396 S.W.2d 404; Gilbert v. State, 126 Tex.Cr.R. 290, 284 S.W.2d 906; Childress v. State, 166 Tex.Cr.R. 95, 312 S.W.2d 247; Creswell v. State, Tex.Cr. App., 387 S.W.2d 887.

■ While the appellant's testimony was to the effect that he was physically abused and threatened and his request to see Hoover, his lawyer, was denied, the trial court's finding from the evidence adduced before him that the confession was voluntarily made is supported by the record. The contention that the trial court erred in permitting the introduction of the confession in that appellant was not advised of his right to counsel and was not taken before a magistrate and was denied due process of law is overruled. Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 2 L.Ed.2d 977, is not deemed authority to the contrary.

Appellant's next complaint relates to the refusal of his requested charge informing the jury as to the law of arrest upon a warrant and the duty of the officer, and instructing the jury to exclude the confession from their consideration unless they found that the law was complied with.

■ Consistent with our prior holdings in Gilbert v. State, 126 Tex.Cr.R. 290, 284 S.W.2d 906; Childress v. State, 166 Tex. Cr.R. 95, 312 S.W.2d 247; Creswell v. State, Tex.Cr.App., 387 S.W.2d 887; and the more recent case of Johnston v. State, No. 38,181, Tex.Cr.App., 396 S.W.2d 404, we find no error. The instruction given to the jury relating to the voluntariness of the confession, as suggested in Lopez v. State, Tex.Cr.App., 384 S.W.2d 345, was adequate.

Appellant's point No. 8 relates to the admission of photographs depicting the scene of the robbery and torture which he says show "a bullet hole with blood."

■ The photographs appear to have been admissible to show the details and scene of the robbery and the extent of the injuries to person and property. Beaver v. State, 148 Tex.Cr.R. 115, 184 S.W.2d 1020; Osborn v. State, 159 Tex.Cr.R. 323, 263 S.W.2d 263; LeMarr v. State, 165 Tex. Cr.R. 474, 308 S.W.2d 872.

■ If the photographs shown in the record reveal blood stains it is difficult to recognize them as such. We overrule appellant's contention that inflammatory photographs were admitted in evidence for the sole purpose of inflaming the minds of the jury against appellant.

Appellant was arrested upon a warrant issued upon complaint charging him with robbery with firearms. The complaint was filed and warrant issued on March 17, 1964. The return on the warrant showed that it was returned executed on March 17, 1964.

The testimony of the arresting officers shows that appellant was arrested about 1 o'clock A.M. on March 18, 1964. Officer Hadley testified that he had the warrant in his possession and showed it to appellant.

After securing the warrant of arrest the officers went to the Turner Motel for the purpose of arresting appellant, arriving about 1 o'clock A.M. They obtained a key from the lady in charge, which was twisted off in an attempt to open the door, then

went to a window of the room occupied by appellant and Officer Stephenson crawled in, disarmed appellant of a .38 caliber Derringer located under his pillow, and got him out of bed.

Called by the defendant in the hearing before the court, in the jury's absence, Officer Hadley gave as reason why they did not knock before entering the room that they had knowledge of the type of person they were going to arrest; knew that he was the suspect of a brutal, vicious robbery and had other outstanding robbery cases against him; was a criminal; was armed and they didn't want to awaken him and get someone killed.

 It is apparent that the warrant of arrest had not been executed prior to the time appellant was gotten out of bed, disarmed of a .38 caliber Derringer located under his pillow, and taken to the police station. The fact that the return showed that the warrant was executed on March 17, when in fact the arrest was made after midnight of that day, is not material on the question of the legality of the arrest.

We find no merit in the contention that appellant's arrest was without a warrant and that the court erred in admitting in evidence the spent hull found in appellant's pocket.

The remaining claim of error relates to the refusal of appellant's requested charge relating to the law of arrest which would have instructed the jury to exclude from their consideration the hull found in appellant's pocket introduced in evidence by the state as Exhibit No. 19.

This requested charge is identical with the refused charge which would have instructed the jury to exclude from consideration the confession if they found or had reasonable doubt that the officers did not comply with the law in making the arrest.

Our disposition of the appellant's contention that the arrest and seizure were unlawful and his claim of error in the court's failure to give a similar charge in connection with his confession disposes of this claim of error.

The evidence sustains the jury's verdict and we find no reversible error.

The judgment is affirmed.