## WILLIAM K. JONES v. STATE

No. 25492. November 28, 1951.

Hon. Owen Thomas, Judge Presiding.

*T. R. Odell*, Lubbock, for appellant.

*John Willoughby*, District Attorney, Abilene, and *Charles E. Brownfield, Jr.*, County Attorney, Anson, and *George P. Blackburn*, State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is murder; the punishment, death.

Appellant, his wife, and 12-year old daughter lived in a railroad section house in the city of Hamlin. The telephone operator in that city testified that shortly after midnight on February 27, 1951, she got a signal from the telephone in the section house, and a male voice said, "Get the fire department; the house is burning up." She stated that a few minutes thereafter she got another call from the same house, and the same voice commanded her to get an ambulance, informing her that two people were dead down there.

Several of the firemen who responded to the call testified that when they arrived they found the fire localized in one bedroom, the blaze coming from the bed therein. They also stated that the partially burned bodies of appellant's wife and daughter were found in the kitchen, that each of them had had their skull crushed and that a bloody hammer was lying nearby. The firemen further stated that appellant was in the house, that he had some small burns on his person, and that he demonstrated concern over securing his coat from his own room therein.

Shortly thereafter, a peace officer arrived. He testified that

he asked appellant, "Did you do this?", and appellant replied that he had; that appellant was then arrested, carried to the city hall, and upon arrival took certain insurance policies from his inside coat pocket and handed them to the officer.

After the arrival of the district attorney at five o'clock on the same morning, appellant made a voluntary statement. Therein he related that earlier in the evening he and his wife had had an argument, that his wife and daughter had gone to bed in one room and he in another. Further, that he had lain in bed planning to kill them; that he had gotten up, secured a can of gasoline, thrown it on them in the bed and ignited the same. The statement continued with the recitation that they had run in the kitchen, and he had decided to get them out of their suffering and had beat them both in the head with the hammer until they were dead. Therein appellant related that he thought the burns then present on his person had come from his wife and daughter.

On March 2, appellant made another voluntary statement to the district attorney which added nothing material to the one taken within a few hours of the homicide.

We shall attempt to group the bills of exception, in order to facilitate a discussion thereof.

A hearing was had on appellant's motion for change of venue. Six newspaper articles from different papers in the area giving details of the crime were introduced. Two witnesses were offered by appellant who testified that they did not think that appellant could get a fair trial in Jones County.

The state, in controverting the motion, offered fourteen witnesses from seven different communities in the county representing many different occupations, who testified to an absence of prejudice against appellant in the county, and that, in their opinion, he could secure a fair trial.

The record contains no showing as to the examination of the venire. This omission, though not controlling, deprives this court of the best possible source of information on the matter.

In Everett v. State, 153 Tex. Cr. R. 180, 218 S. W. (2d) 471, we reviewed the entire proceeding on the motion, in what we

consider a stronger case than the one at bar, and held that the trial court did not abuse his discretion in overruling the motion for change of venue.

, In Bowers v. State, 155 Tex. Cr. Rep. 401, 235 S. W. (2d) 499, we held that where the evidence regarding prejudice is conflicting, the trial court may utilize his discretion in passing on the motion and upheld the trial court in refusing the motion.

Recently, in Jones v. State, (Page 248 of this volume), 240 S. W. (2d) 771, in approving the action of the trial court in refusing the motion for change of venue, we said:

"If it be conceded that a prejudice existed against appellant, yet there is an absence of any testimony that such prejudice found its way into the jury box."

Appellant did not testify, but defended on the grounds of insanity.

Bill of exception No. 16 complains of the introduction in evidence of a letter written by appellant while in jail following the homicide. The trial court admitted the letter on the question of insanity alone and so charged the jury. In view of the novelty of this question, we set forth the text of the letter:

"Dear Courtneys,

"I want to ask you to do me a favor. I have decided to make a plea of insanity when my trial comes up. Will you see A. M. Gray and V. C. Hale there at the R. R. Bunk house see if they will be a witness for me in that direction. I dont wonthem to lie about it. But thought maby it looked that way to them. See the Depot. Agent to and Weldon Johnson there at the Depot. See Mr. Foster the Chief of Poliece. See Mr. Bert May, and John Neal. Get me fletcher to help you. See if you can get me four or five witness. I don't want any of them to tell a lie. But thought it mite of looked that way to them. See Doctor Hawkins See what he thinks about it. You and Mr. Bill Fletcher can get up somthing. Please let me know. What you learn. This is the business I wanted to See you about, in the card I wrote you a day or 2 ago. lots of love

"W. K. Jones"

Since the letter is not incriminatory of nor does it deal with the substantive crime of murder charged against appellant and

since it was limited to the question of insanity, we hold its admission in evidence to have been proper. In each of the cases cited by appellant, the writing did incriminate its author with the commission of the offense charged, and hence the reason for the rule set forth therein.

Bills of Exception Nos. 4, 5, 6, 8, 9 and 10 deal with the introduction of all the evidence in the case concerning insurance, and for that reason they will be discussed together. One policy of insurance, together with the application therefor, and the application for another policy were introduced in evidence; witnesses were called to show that both policies were in force at the time of the killing and that appellant had signed the applications therefor. One policy, applied for in April, 1950, which may be described as a health and accident policy, among other things, provided for the payment to appellant of the sum of $3000 upon the accidental death of his wife and daughter. The other policy, applied for in December, 1949, provided for payment to appellant of the sum of $1000 upon the death of his wife and daughter.

The objections to the introduction of these instruments and the conversations between the parties relating to their issuance, as shown by the above bills, which we consider worthy of note were:

1. That since one of the applications showed on its face to have been applied for by appellant's wife, the same was hearsay as to appellant, and

2. That they were evidence of transactions too remote to the commission of the offense to be binding upon the appellant.

The first of these objections is answered by the court's qualification which shows that appellant was present at the time the conversations took place and actually signed his wife's name to the application himself.

Under the second objection, it seems to be appellant's contention that only recently purchased insurance policies are admissible on the question of motive. With this contention, we cannot agree. We feel that the time of purchase of the insurance would go to the weight rather than the admissibility of the evidence. Appellant's confession related that he lay in bed and "thought about this . . . . a good little while" and "planned that I would kill them." After this he went out and got gasoline and ignited them in bed. It will be noted that appellant did not

use the hammer on either of his subjects until after they had extricated themselves from the burning room. The evidence of the existence of insurance in force at this time was admissible because the jury might believe that the appellant had planned to make their death appear accidental so as to reap the harvest of the accidental death clause of one of the policies. The fact that appellant was concerned, during the time of the fire, with the whereabouts of his coat in which he had certain insurance policies may also have been utilized by the jury in passing upon the question of a probable motive for the killing.

In Parks v. State, 124 Tex. Cr. R. 405 63 S. W. (2d) 301, we approved the admission in evidence of the following: "Appellant had taken out $18,000 worth of insurance on the life of his wife, part of which had been taken out some time prior to the homicide and $13,000 of which had been applied for within a short time prior to the death of his wife. The applications were signed by the appellant. One or more of them were signed in the name of his wife, but there was evidence that the signatures were in the handwriting of the appellant."

In Reese v. State, 142 Tex. Cr. R. 254, 151 S. W. (2d) 828, we said: "Bill No. 9 is an objection to the introduction of a life insurance policy on the life of the deceased, payable, in the event of death, to appellant. We think the State was within its rights in thus offering this proof. The jury might have used same as a probable motive for the killing."

In Bills of Exception Nos. 7 and 13, complaint is made about testimony of the officers tending to establish the voluntary nature of both confessions. These bills are leveled *not* at the confession itself but relate to the giving of the warning by the district attorney. Appellant seems to contend that since he was then under arrest, nothing he said could be admitted against him. To hold that it might not be shown that appellant was informed that any statement he might make could be used against him and that he replied that he so understood or that he said, "No, I want to tell you all about it" would make it impossible for the state to show that any confession was in fact voluntarily made. The bills reflect no statement by appellant of any incriminatory matter and therefore show no error.

Bill of Exception No. 14 seeks to complain that appellant was denied the right to cross-examine a doctor who had testified that, in his opinion, appellant was sane. The bill is deficient in

that it fails to show what the witness would have answered had he been permitted to do so. Further, it does not appear from the bill that counsel was actually reading from Dr. Gray's medical text book or that the same was a recognized authority.

Bills of Exception Nos. 1 and 2 deal with objections to the court's charge and failure of the court to give a special charge on the question of insanity of appellant at the time of the making of the confessions.

Because of the peculiar facts in this case, we do not consider that a serious question is raised. In the case at bar, we have these factors:

1. The oral confession made to the arresting officer and introduced without objection.

2. The fact that the confession taken on March 2 added nothing material to the one taken within a few hours of the homicide. This is important because we have a finding of a jury in this case that appellant was sane on the day of the homicide, which was also the day of the first confession, and the requested charge would have only required a double finding on this issue.

We have reviewed the other bills of exception and find no error reflected thereby.

Finding no reversible error, the judgment of the trial court is affirmed.