## GEORGE AARON V. STATE

No. 27,113. November 17, 1954
Rehearing Denied February 9, 1955

Second Motion for Rehearing Denied
(Without Written Opinion) March 9, 1955

*Lloyd A. Wicks, Sr.,* Ralls, *Billy Hall,* Littlefield, and *Mc-Carthy, Rose & Haynes,* by *George S. McCarthy,* Amarillo, for appellant.

*Travis D. Shelton,* District Attorney, Lubbock, and *Wesley Dice,* State's Attorney, Austin, for the state.

BELCHER, Judge.

Appellant was convicted for offering a bribe to Roy Hillin, Sheriff-elect of Crosby County, the indictment alleging that appellant offered Sheriff-elect Hillin $1,500 per month to thereby influence and induce him to omit to arrest or suppress violations of the local option liquor laws in Crosby County by seven men to be named by appellant; the punishment, 2 years in the penitentiary.

It was stipulated that Crosby County was a dry area.

It was stipulated that Roy Hillin was elected sheriff of Crosby County at the general election on November 7, 1950, and took his oath of office as sheriff of said county on January 1, 1951.

Roy Hillin, Sheriff of Crosby County, testified that he first met appellant, who was alone and driving his automobile, about November 10, 1950, on a public road in Crosby County, at which time appellant told him that he wanted to name five bootleggers to operate by handling intoxicating liquor in Crosby County and would pay him $1,000 on the first of each month after he qualified as sheriff in 1951 if he would "not arrest them or

nothing. Just let them have their own way here with the bootlegging in Crosby County"; that he told appellant he could not do that; and then appellant said that he wanted to talk to him about the matter again before Christmas.

Sheriff Hillin further testified that appellant came to his home at 7 a.m. on December 16, 1950, and asked if he had made up his mind about what he was going to do about the bootleggers; that he replied that he would not wilfully let anyone violate the law and that the appellant then raised his original offer to $1,500 a month to let him operate seven bootleggers delivering and selling intoxicating liquor in Crosby County "and you not arrest them or bother them in any way"; that he refused such offer and asked appellant to leave his place which he did.

Appellant, while testifying in his own behalf, stated that during the months of November and December, 1950, he was ill and unable to drive an automobile; that he did not see Sheriff Hillin on November 10, 1950, and did not see him at his home near Crosbyton on December 16, 1950, and at no time made Sheriff Hillin an offer of money for protection in the handling of intoxicating liquor by bootleggers to be named by him in Crosby County; and that he was in Amarillo on December 16, 1950. Appellant offered considerable evidence showing his physical condition and his whereabouts on the days in question which supported his testimony.

The jury resolved the disputed issue of fact against the appellant, and we find the evidence sufficient to support its verdict.

By Bill of Exception No. 2, appellant contends that the court erred in overruling his original and supplemental motion for a change of venue.

The record shows that both parties announced ready for trial on November 23, 1953, and that appellant orally requested that the members of the jury panel be examined separately until a 32-man panel was qualified from which the jury to try the case would be selected, which request was, by the court, granted.

These motions for change of venue were made and filed after both parties had announced ready for trial and thirty jurors had been held qualified by the court from which the trial

jury was to be chosen. The state controverted these motions for change of venue.

We have carefully read the voir dire examination of the twelve jurors who tried this case and do not find therefrom that any prejudice against the accused or any bias for the state's principal witness found its way into the jury box. This we think, in a case of this nature, is the fairest test of whether the venue should have been changed. Lopez v. State, 158 Texas Cr. R. 16, 252 S.W. 2d 701.

Appellant's motion for change of venue, as we understand it, is based upon Art. 563, Vernon's Ann. C.C.P., which provides that when an unsuccessful effort has been once made to procure a jury for the trial of a felony, and all reasonable means have been used, if it be made to appear to the court by the affidavit of the attorney for the state, or any other credible person, that no jury can probably be had in that county, the court may order a change of venue, and cause the reasons therefor to be placed upon the minutes of the proceedings.

The record shows that this is the first time this case had been called for trial, therefore no unsuccessful effort had once been made to procure a jury. 12 Texas Jur. 472, Sec. 178.

Appellant contends that the court erred in overruling his motion to quash the regular panel and the list of talesmen summoned, which motion was filed after thirty prospective jurors had been selected from which the trial jury was to be chosen, because of their prejudice and also their bias toward the state's witness, Roy Hillin, and the improper manner of summoning the talesmen by the officers.

Under the terms of Arts. 641 and 608, C.C.P., a challenge to the array cannot be made to a jury selected by jury commissioners. It was not shown that the officers acted corruptly, or that they performed their duties with any intention of selecting talesmen prejudiced against appellant or for the state. Mills v. State, 123 Texas Cr. R. 395, 59 S.W. 2d 147. Thus, no error is shown.

Appellant contends that the trial court erred in failing to quash the indictment upon the ground that it should have alleged a tender of something of value at the time the offer was made or an allegation of an ability to do so.

Under the terms of the statute defining this offense, it is not necessary to allege a tender of anything of value at the time of the alleged offer or to allege an ability to do so at such time. The offense is complete when the offer is made under the facts here charged in the indictment. Art. 158, P.C.

Appellant complains of the court's refusal to give his special requested charge in which he would have the jury instructed as to the meaning of the term "bribe," as used in the court's charge. This requested charge was, in substance, submitted in the court's main charge, except for the following:

"* * * The actual tender of a bribe is not necessary to perfect the offense of offering a bribe, as contemplated by the statute. Any expression of an ability to produce a bribe, as a gift to the official to induce him to do an illegal act or refrain from performing his official duty is all that is necessary to perfect the crime charged in the indictment."

It is not necessary that a showing be made of ability to perform by the person making the offer to constitute the offense here charged. This offense is complete when the offer is made. Art. 158, P.C. We perceive no error in refusing this instruction.

Finding no reversible error, the judgment of the trial court is affirmed.

Opinion approved by the Court.

### ON MOTION FOR REHEARING

MORRISON, Presiding Judge.

Appellant earnestly and forcefully contends that Sheriff Hillin by his conduct in this case rendered himself an accessory to the crime committed by the appellant in that, since he did not report the offer to bribe to the grand jury of the county for nearly two years after it occurred, he thereby gave aid in order that the appellant might avoid arrest, as denounced by Article 77, V.A.P.C. The question thus presented is not without difficulty and will require a more detailed discussion of his activities.

Hillin was the sheriff-elect at the time when the offer was made. He had been out of office for some time and was necessarily endeavoring to acquaint himself, in advance of again as-

suming the office, with what laws were being violated in the county and who was violating them. He testified that he "had been out of the sheriff's office four years and wanted to get on the inside, and I think I pretty well got on the inside by Mr. Aaron's talking to me." At their first meeting the appellant told Hillin that he had just delivered a load of whiskey to P. D. Alston, who was a resident of his county. At their second meeting the appellant told Hillin that he wanted to make arrangements for Alston, Louis Flowers and Eddie Montgomery to bootleg in the county. On January 1, 1951, the day Hillin took the office as sheriff, he therefore knew the following: (1) That the appellant had offered to bribe him, and (2) That three named individuals were actively engaged in bootlegging or were contemplating entering that business.

The offer to bribe case rested upon his testimony alone, and any peace officer will recognize his reluctance to proceed without further corroborating evidence. Appellant had told him the names of citizens of his county with whom he intended to do business. If he were able to prove that appellant actually did business with them, this would in a small measure corroborate his own testimony on appellant's trial. We have concluded that in a case such as this the sheriff had the right to delay the initiation of prosecution for a reasonable time in order to ferret out corroboration of his own testimony, if he could.

Let us examine Sheriff Hillin's conduct further. If he had wanted to aid the appellant to avoid arrest and trial, he would have remained completely silent about the entire transaction. Did he do this? The record shows that he talked to Mr. Elliott, his deputy, about the offer to bribe early in 1951; he talked to the county attorney "during the first part of that year" and then again in 1952; he talked to Judge Blair, his district judge, "sometime along, kind of the first of the year"; he talked to Travis Shelton, his district attorney, possibly in 1951 and then again in 1952; he talked to Leon Bowman, the superintendent and another Texas Liquor Control Board man in March of 1951; he talked to Sheriff Kimbell at Dickens and finally presented the case to the grand jury in November, 1952.

This does not appear to us to be the conduct of one who is aiding another to escape arrest and punishment.

We could not hold that Hillin was an accomplice witness unless we were satisfied that facts showed that Hillin's relation-

ship to the appellant would render him accountable to the law as an accessory to the crime which the appellant had committed. We do not think the facts justify such a finding.

Appellant asks that we re-examine the voir dire examination of the jurors who served at his trial and hold that the trial court erred in not granting his motion for change of venue irrespective of when the same was filed. We have read the entire testimony of all twelve jurors and remain convinced that we disposed of the question of venue properly in our original opinion. If we held that a change of venue should have been granted in this case, it would be tantamount to holding that the venue must be changed in all cases where the local sheriff is the state's principal witness. The veniremen all knew the sheriff and did not know the appellant, but this fact does not necessarily mean that the appellant did not secure a fair trial. The fact that the jury at one juncture inquired of the court if they might suspend any sentence which might be imposed upon the appellant indicates to us that he did receive a fair trial. Appellant did not receive a suspended sentence in this case because he refused to ask for one.

Remaining convinced that we properly disposed of this case originally, appellant's motion for rehearing is overruled.

DAVIDSON, Judge, dissenting.

I cannot agree to the affirmance of this conviction, and respectfully enter my dissent.

It is my opinion that the state's witness Hillin is an accomplice witness and, there being no corroboration of his testimony, that the conviction cannot stand.

The complaining witness, Roy Hillin, was what might be termed a peace officer of considerable experience, having served as sheriff of Crosby County for a period of six years beginning January 1, 1941, and as a policeman in the city of San Antonio.

He was again elected to the office of sheriff of Crosby County at the November general election in 1950 and took over the duties of that office on January 1, 1951.

Hillin testified that while he was sheriff-elect, and on or about November 10, 1950, and December 16, 1950, appellant

offered to bribe him not to enforce the liquor laws in the county, the exact nature of which bribery attempt is stated in the original opinion.

No one, save and except Hillin, heard appellant make the offer to bribe.

Hillin made no effort to report the matter to the grand jury at that time in session; he made no effort to file an accusation of any character growing out of the unlawful offer to bribe.

At the May term, 1951, the grand jury met and adjourned and Hillin made no report of the matter thereto. The grand jury met and adjourned at the November term, 1951, with Hillin still making no report of the matter to that body. So, also, was the same silence maintained while the grand jury was in session at the May term, 1952.

It was not until October, 1952, that Hillin gave public notice of the bribe that had been offered him and this was to the legislative investigating committee meeting in Amarillo. The notice to that body was followed by Hillin's broadcast over radio.

It was not until the May term, 1953, that the indictment in this case was returned.

Upon cross-examination, Hillin was repeatedly pressed for some reason or explanation for his failure to arrest or to file against appellant for violating the law by offering him the bribe or to go before the grand juries and report to them the alleged violation of the law. No definite answer was given, or attempted. At one time, he gave this explanation:

"Well, I may have waited until the time got right, and everything got right; then I went before a Grand Jury."

He made no effort to explain what was meant by that expression. At another time in his testimony, Hillin explained his nonaction by saying that "the pumpkin wasn't ripe." He made no explanation of what he meant by that term. Again Hillin was asked:

"I've asked you this three or four times, Mr. Hillin, I want you to tell these twelve men what occurred from November of 1950 until October of 1952, when you made your trip to Ama-

rillo, that made up your mind that the time was ripe to tell the public about George Aaron?"

His reply was:

"Well, all I know to tell the jury about it, I just thought the time had come that we *was* ready to do something about it, and I just went ahead."

If Hillin gave any explanation of his conduct in failing to enforce the law, it is in the testimony I have here quoted.

The state made no effort to corroborate Hillin in any part of his testimony. He stands uncorroborated. In fact, the state rested its case solely upon Hillin's testimony.

The question arises as to whether Hillin, by his admitted conduct, had placed himself in the position of being an accomplice witness in the crime he charged appellant had committed.

The sheriff of a county is, or should be, its chief law enforcement officer. The Constitution (Art. V., Sec. 23) required his election and enjoins the legislature to prescribe the duties of that office. In pursuance of that constitutional mandate, the legislature (Art. 41, C.C.P.) makes every sheriff a conservator of the peace in his county, and requires that he "shall arrest all offenders against the laws of the State, in his view or hearing, and take them before the proper court for examination or trial. He shall quell and suppress all assaults and batteries, affrays, insurrections, and unlawful assemblies. He shall apprehend and commit to jail all offenders, until an examination or trial can be had."

This statute has been a law of this state since 1846.

When appellant made the offer to bribe, as testified to by Hillin, it became the duty of Hillin upon becoming sheriff of the county to then arrest him, for appellant had committed a felony in his presence and hearing. The least that he could have done was to institute proceedings to prosecute appellant for the felony he says was committed by him.

In keeping with Art. 41, C.C.P., and to insure the performance by a sheriff of the duties imposed upon him by law, the legislature passed Art. 230, Vernon's P.C., which makes it unlawful for any sheriff to wilfully fail to discharge any duty im-

posed on him by law. The punishment affixed to a violation of the statute is a fine not to exceed five hundred dollars unless the particular act is made a felony by some other law. It will be noted that the only peace officer included within that statute is the sheriff. The law demands of the sheriff a higher fidelity to the duties of his office than any other peace officer.

According to Hillin's own admissions, his wilful failure and refusal to arrest and proceed against the appellant made him guilty of violating that statute and trust. So, then, not only did Hillin fail to do his duty in arresting appellant for the felony he says was committed in his presence but he violated the law in not doing so.

The question arises as to whether Hillin's conduct, together with the violation of the law and all the other facts and circumstances, constitutes him an accomplice witness. In this connection, it is well to keep in mind that for one to be an accomplice witness it is only necessary that he be connected with the crime by an unlawful act or omission on his part, transpiring either before, at the time of, or after the commission of the offense. Haynes v. State, 113 Texas Cr. R. 93, 18 S.W. 2d 1081; Benavides v. State, 123 Texas Cr. R. 583, 60 S.W. 2d 436; Blake v. State, 131 Texas Cr. R. 144, 96 S.W. 2d 1111; Stevens v. State, 133 Texas Cr. R. 333, 110 S.W. 2d 906.

Obviously, Hillin had no connection with the alleged offense prior to its commission. If he was connected with the offense, it is because his acts and conduct at the time of and subsequent to the commission thereof constitute him an accessory thereto.

An accessory is one who, knowing that an offense has been committed, conceals the offender or gives him any other aid in order that he may evade an arrest or trial or the execution of his sentence. Art. 77, Vernon's P.C. Our statute is not materially different from the common law offense of accessory after the fact.

From time to time, this court has had occasion to construe that portion of Art. 77, Vernon's P.C., relating to the giving of aid to one who has committed an offense so that he might evade an arrest or trial.

In the early case of Blakeley v. State, 24 Texas App. 616, 7 S.W. 233, we said that any assistance given to one known to be

a felon, in order to hinder his apprehension, trial, or punishment, is sufficient to constitute him an accessory.

In Parrish v. State, 134 Texas Cr. R. 187, 114 S.W. 2d 559, we said:

"It has been held under the foregoing definition that it is not essential that the aid rendered to the criminal be of such character as will enable the criminal to effect his present escape or concealment, but it is sufficient if it enables him to evade present arrest and prosecution."

Blakeley v. State, supra, is one of the authorities cited as sustaining the rule announced.

The rule stated is in full force and effect. It is based upon sound logic and reasoning, because no man has or ought to have the legal or moral right to wilfully and deliberately, by any act of omission or commission on his part, aid a criminal to escape present arrest and prosecution for a felony which he and only he knows has been committed and who will escape all punishment for the crime so committed unless he acts.

It is apparent that the question as to whether one becomes an accessory to the commission of an offense by another by rendering aid or assistance in evading arrest or trial therefor must, of necessity, depend upon the particular facts and circumstances of each case.

It is with this idea in view that I summarize the facts:

Hillin was the sheriff of the county; he was experienced in the duties of that office. He had known at the very moment appellant offered him a bribe as sheriff-elect of the county that a felony had not only been committed in his presence but directly involved him, but for which the felony was not and could not have been committed. He knew and was charged with notice that after he became the chief law enforcement officer of the county it was his duty to arrest appellant and to charge him with the felony which had been committed. Hillin had been charged with notice that if he failed to do his duty as sheriff in arresting an offender he, himself, would be violating the law. He knew that only he and appellant had knowledge of the felony which the latter had committed in his presence and that, until he made known what had happened and the crime committed, appellant would not be arrested or brought to trial or punished therefor.

When taken into consideration with the further fact that Hillin gave no reason or excuse for his failure to do his duty and wholly evaded any explanation thereof, all these facts must, of necessity, point to but one thing—and that is that Hillin, by his conduct for a period of approximately two years and by his failure to divulge the information, knowingly and intentionally prevented appellant's arrest and trial for a felony that he and only he (Hillin) could bring to light. No construction can be given to such conduct other than that Hillin, for some reason known only to him, deliberately and wilfully refused to perform the duties of his office and, by such refusal, knowingly aided appellant in evading arrest and trial for a felony.

The fact that Hillin finally made known appellant's crime and proceeded to try to get him indicted does not exonerate or excuse him of the crime he had committed two years prior. To the contrary, it shows guilt on his part and opens wide the field of conjecture as to what caused the "pumpkin" to get "ripe," so that he might do his duty as he should have done when the offense was committed. Hillin's admitted conduct is such as to cause wonder as to what the "pumpkin" was to which he referred and what caused it to be so long in getting "ripe" or to ripen at the particular time it did.

The answer must remain the subject of wonder and conjecture, for Hillin, though repeatedly pressed for an answer, refused to give one.

Although Hillin made no effort to explain his silence and non-action, I note that my brethren, in the opinion overruling appellant's motion for rehearing, ascribe to Hillin an excuse when they say: "We have concluded that in a case such as this the sheriff had the right to delay the initiation of prosecution for a reasonable time in order to ferrett out coroboration of his own testimony, if he could."

If there is any evidence in this case that authorizes such conclusion, I have not found it. Certainly Hillin did not say so.

The danger in the statement of my brethren lies not in the fact that it is unauthorized by the record but because it justifies the sheriff in failing to perform the duties of his office by, upon, and for facts which, in law, constitute no defense to his violation of the law.

My brethren, in their opinion, suggest another reason for exonerating Hillin in his conduct. This is that he said he talked with his deputy, with the district attorney, with the district judge, with the superintendent of the Texas Liquor Control Board, and with the sheriff of another county.

Of course this record does not reveal what Hillin told those officers. I am unwilling to say that he told them about the offer to bribe, because I cannot bring myself to believe that they would have condoned Hillin's conduct in delaying appellant's arrest and prosecution had he told them of such offer to bribe. To my mind, it is altogether reasonable and in keeping with the character and integrity of those officers that I say that had Hillin told them about the offer to bribe they would have advised him to follow rather than to disobey the law.

Regardless of what Hillin did or did not tell those to whom he said he talked, the fact remains, nevertheless, that he did not do his duty or fulfill the obligation imposed upon him. After all, it was Hillin's responsibility to bring about appellant's arrest and prosecution if appellant was guilty of doing that which Hillin said he did.

By education, tradition, and respect for law and order, the people of this great state rightly look upon the office of sheriff as one of high honor and responsibility because it represents and is the epitome of law and order in the county. It is to that office that the people look first for a defender and protector against those who would violate our laws and by their acts of criminality would destroy the lives, homes, and possessions of our citizens. Those who are chosen by the people to fill the high office of sheriff assume that office with full knowledge of such trust and the duties imposed thereby.

These facts are adverted to in order to demonstrate that the witness Hillin was more than an ordinary citizen, for he was sheriff of the county. As a witness upon the stand testifying in this case, he represented not only the high position of honor. trust, and integrity with which the people have endowed the office of sheriff, but he was also the representative of law and order in the county.

If a criminal was to be aided by some person in escaping present arrest and prosecution for a felony, the people had a right to expect that the sheriff of the county was the last per-

son who would be guilty of so doing. That, however, is exactly what this record shows the sheriff did.

I am convinced that, under the facts of this case, Hillin was an accomplice witness and that, upon the uncorroborated testimony of the accomplice, this appellant should not go to the penitentiary and serve the punishment here imposed.

Thus, my dissent.