Leon Willis **JOHNSTON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 38181.

Court of Criminal Appeals of Texas.

June 2, 1965.

Rehearing Denied Oct. 20, 1965.

Second Motion for Rehearing Denied Dec. 8, 1965.

L. J. Varnell, Jr., Herman Fitts, Mineral Wells, for appellant.

Sam Cleveland, Dist. Atty., Stephensville, and Leon B. Douglas, State's Atty., Austin, for the State.

MORRISON, Judge.

The offense is statutory rape; the punishment, death.

The mother of the injured girl testified that on March 7, 1964, the day after her eighth birthday, her daughter dressed and left the house at 5:20 p. m. to go for a walk in the neighborhood with instructions not to go farther than Second Avenue, that at 5:55 p. m. her daughter came running home screaming and crying and said "Oh Mother, this man took me out away out into the country and laid his body up close to my little body", and "it hurt so bad, mother". She immediately called the police and a physician, and the girl was taken to the clinic.

The injured girl testified that she was eating an apple and that she was pausing on a bridge over a canal not far from her house watching the fish when a man whom she thought worked with her father stopped in a white pickup and asked her if she wanted a ride home. As she went around the back of the pickup she observed the word "Ford" in red letters. Instead of taking her home, appellant, whom she positively identified at the trial, drove past the end of the pavement, turned off the road and came to a halt near an abandoned barn. Appellant instructed her to take off her pants and shoes and sox. When she demurred he stated, "I'll never take you home if you don't do what I say". She complied and also obeyed his command that she lie down on the seat of the pickup. Whereupon appellant unzipped his pants, took out the "thing that he goes to the bathroom with" and put it in "mine". Just before doing so, appellant opened a colored box and put some "medicine" down between her legs. When she cried out in pain appellant told her to "shut up" or he would not take her home. After some time appellant let her up, told her to redress herself and re-

turned her to a spot some two blocks from her home where he let her out and admonished her not to run or to tell anyone. She testified that she directed the officers to the spot near the abandoned barn and identified pictures thereof which were introduced in evidence.

Dr. O'Quinn testified that he examined the injured child before 7:00 p. m. on the night in question and found blood coming from the vaginal area, a tear in the hymen and live sperm which, in his opinion, had been placed there "within hours" before.

Mr. Gaither, a witness, testified that he came out from Fort Worth on "an assignment to pick up a pickup" from appellant in Mineral Wells and finally was able to locate it and take it into his possession on March 7, 1964, at approximately 5:50 p. m. He had started back to Fort Worth when he was taken into custody by the Sheriff. Later that night he was released and returned to Fort Worth. The following day the officers came to Fort Worth, took pictures of the pickup and its underside and took with them the front and rear wheels from the right side of the pickup.

Sheriff Sommerfeld testified about apprehending the pickup which Gaither was driving and proceeding under the direction of the injured girl to the abandoned barn where he recovered an old automobile hood from the ground, from which he detected tire tracks which corresponded in every detail with those from the tires on the wheels which had been taken from the pickup in Fort Worth.

Two days after the offense, Ranger Lynch went with appellant to a spot where appellant told him he had thrown a container of "greasy stuff" and there found a colored container with metal top and bottom which was shown by the testimony of a chemist from the Department of Public Safety to contain a form of petroleum jelly identical to that found on the panties of the injured girl which also had been submitted to him for inspection by the Palo Pinto County officers. These are but a few of the minute details of this crime which were developed and presented by one of the most competent District Attorneys of our time.

■ Appellant's written confession was admitted over the sole objection that "the defendant did not have sufficient mentality to understand the nature and effect of this statement at the time he made it." Since the voluntary nature of the confession had not been and was not challenged in any way throughout the trial, and since there had been no evidence as to appellant's "mentality" at the time the statement was offered, the court clearly ruled properly in admitting it in evidence.

Appellant called lay witnesses who testified that as a child he had not acted like other children and who "always felt like he just wasn't all there." However, his own witnesses testified that he had graduated from high school as an average student, had served a "hitch" in the Navy and was honorably discharged. Appellant's principal witness was a neuropsychiatrist, Dr. Rubin, who had examined appellant one time since the commission of the offense, and who testified that in his opinion appellant was mentally ill in the realm of undifferentiated schizophrenia and was not in constant touch with reality at all times. However, Dr. Rubin testified that appellant knew the difference between right and wrong.

The State offered lay testimony that appellant was in their opinion of sound mind and the testimony of a practicing physician of 50 years experience who had interviewed appellant on frequent occasions prior to the trial and who expressed the opinion that he was of sound mind.

■ The evidence amply supports the conviction and the jury resolved the disputed issue of appellant's insanity against him.

We shall now discuss the remaining contentions advanced by appellant's two extremely diligent and conscientious court appointed attorneys in brief and in argument.

Attached to appellant's motion for new trial alleging jury misconduct are the affi-

davits of juror Bailey and juror Harris in which they state that during their deliberations the foreman or one of the jurors stated that if the death penalty was given there would be an automatic review of the case by the Board of Pardons and Paroles and by the Governor. Also attached thereto is an affidavit of one of appellant's court appointed attorneys which states that he interviewed juror Clark, who told him that during their deliberations one or more of the jurors stated "that there had been too much of this kind of thing going on and that something needed to be done about it," but that Clark declined to made an affidavit to such fact.

At the hearing on the motion nine jurors testified, and the affidavit of another was introduced. Appellant called jurors Bailey, Clark, Harris and Berry.

Bailey testified that a question was raised as to what would happen in case the jury voted the death penalty, and one of the jurors answered that there would be an automatic appeal to the "State Board of Appeals" and then an automatic appeal to the Board of Pardons.

Clark testified that he had heard some people say that "there is a lot of that kind of thing going on", but did not recall saying that he had heard others say "that something needed to be done about it." He further stated that juror Berry had mentioned "appeal courts", but there was no discussion of the subject.

Harris testified that his affidavit was in error and that the question was answered by foreman Berry, who stated that the case "could" or "would" go to the Court of Criminal Appeals.

Berry testified that he answered the question by stating that the case could be appealed to a higher court and the Board of Pardons and Paroles, but that he did not say it would be automatic or mandatory.

The State called juror Kincaid, who stated that the question was answered by one of the jurors who said that the case could be appealed but nothing was mentioned about such appeal being mandatory.

Appellant then called jurors Murphy and Kaminsky. Mrs. Murphy stated that the question was answered by some juror who said the case could be appealed to a higher court and that she also heard several jurors state "there has been too much of this kind of thing going on" and "something needed to be done about that sort of thing." Kaminsky testified that the question was answered by some juror who stated that the case could be appealed and reviewed by a higher court. The affidavit of juror Van Natta was to the same effect.

We have reviewed the testimony with care because of the earnest efforts of court appointed counsel.

In Roberson v. State, 160 Tex.Cr.R. 381, 271 S.W.2d 663, we said "Our primary concern is to determine whether or not the information which was received by the jury was untrue or was harmful to appellant." Since an issue of fact was raised it then became the province of the trial court to decide the same. Be this as it may, we observe that in the recent case of Ex Parte Caldwell, Tex.Cr.App., 383 S.W.2d 587, this Court granted a writ of habeas corpus in a death penalty case and remanded the case to the trial court for retrial where notice of appeal in the accused's purported appeal had not been timely filed. By this action we demonstrated that in Texas all death penalty convictions can receive a review by this Court as a matter of right.

■ Since the allegation in the motion for new trial concerning a reference to the Halford case is not supported by the requisite affidavit of anyone in a position to know whether such a matter transpired within the jury room, that portion of the motion before the trial court was insufficient as a pleading; the trial court is not authorized to consider the same, and this Court will not consider the evidence adduced as to such matter. Vowell v. State, 156 Tex.Cr.R. 493, 244 S.W.2d 214; Clay v. State, 157 Tex.Cr.R. 32, 246 S.W.2d 180; Valdez v.

State, 157 Tex.Cr.R. 363, 248 S.W.2d 744; Brown v. State, 160 Tex.Cr.R. 150, 267 S.W. 2d 819; and Holmes v. State, 169 Tex.Cr.R. 343, 333 S.W.2d 842.

At the hearing on appellant's motion for change of venue, appellant called four representative citizens and one of appellant's attorneys who testified that in their opinion appellant could not receive a fair trial because three alleged rapes had occurred in the county in the last fourteen months or two years, and the people of the county were, in their opinion, aroused against anyone charged with this particular offense. None of them mentioned any prejudice against appellant individually, but confined their concern to the crime for which he was to be tried. The State called four equally representative citizens who testified that they had heard very little discussion of the case against appellant and who expressed the opinion that appellant could secure a fair and impartial jury and trial in Palo Pinto County.

■ The voir dire examination of the panel from which the jury which tried appellant was chosen is not brought forward in this record; however, it is shown that appellant had not exercised all of his peremptory challenges at the time the panel was completed. There is no showing as to how many veniremen were excused because of fixed opinion. There is a complete absence of any showing that prejudice against the appellant found its way into the jury box at his trial. This Court has held that such is requisite and the fairest test of whether venue should be changed. Jones v. State, 156 Tex.Cr.R. 248, 240 S.W.2d 771; Jones v. State, 156 Tex.Cr.R. 475, 243 S.W.2d 848; Johnson v. State, 244 S.W.2d 235; Golemon v. State, 157 Tex.Cr.R. 534, 247 S.W.2d 119; Lopez v. State, 158 Tex. Cr.R. 16, 252 S.W.2d 701; Aaron v. State, 161 Tex.Cr.R. 156, 275 S.W.2d 693; McCarley v. State, 161 Tex.Cr.R. 263, 276 S.W. 2d 300; Kizzee v. State, 166 Tex.Cr.R. 191, 312 S.W.2d 661; Slater v. State, 166 Tex. Cr.R. 606, 317 S.W.2d 203; Mason v. State,

Tex.Cr.App., 375 S.W.2d 916; and Stroble v. State of California, 343 U.S. 181, 72 S.Ct. 599, 96 L.Ed. 872.

Finding no reversible error appearing, the judgment is affirmed.

## ON APPELLANT'S MOTION FOR REHEARING

DICE, Commissioner.

Appellant, in his motion for rehearing, in addition to re-urging his original contentions, insists that his confession should not have been admitted in evidence because he was not represented by counsel during his interrogation by the officers and when he signed the confession. This, he insists, constituted a denial of his right to the assistance of counsel, under the Sixth Amendment to the Constitution of the United States, and to due process of law, under the Fourteenth Amendment. Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, is relied upon in support of the contention.

■ The contention is also made by appellant that he was denied due process of law because he was not immediately taken before a magistrate after his arrest, as provided by Art. 217 of the present Code of Criminal Procedure.

The facts surrounding the making of appellant's confession show that he was taken into custody by the officers at his home on a Sunday night between 8 and 9 p. m. From there he was taken to the police station, where he was questioned by the district attorney. At approximately 11 o'clock, p. m., the same night, he made and signed the written statement introduced in evidence. The failure to take appellant before a magistrate on a Sunday, between such hours, did not constitute an unreasonable delay. Gilbert v. State, 126 Tex.Cr.R. 290, 284 S.W.2d 906; Childress v. State, 166 Tex.Cr.R. 95, 312 S.W.2d 247; Creswell v. State, Tex.Cr.App., 387 S.W.2d 887. The claim of a denial of due process is overruled.

Appellant's claim that he was denied the right to the assistance of counsel, as guaranteed by the Sixth Amendment to the Federal Constitution, is not supported by the record, as there is no showing that at any time before signing the confession he asked to consult with an attorney. This, in itself, distinguishes the case from Escobedo v. State of Illinois, supra. Such has been the holding of this court. See: Miller v. State, Tex.Cr.App., 387 S.W.2d 401; Hinkley v. State, Tex.Cr.App., 389 S.W.2d 667; Corry v. State, Tex.Cr.App., 390 S.W.2d 763.

Remaining convinced that a proper disposition was made of the case on original submission, the motion for rehearing is overruled.

Opinion approved by the court.