Billy Ray ROGERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 53076.

Court of Criminal Appeals of Texas.

April 20, 1977.
Rehearing Denied May 10, 1977.

Dan J. Anderson, Richardson, for appellant.

Henry Wade, Dist. Atty., and John Tatum, Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

This is an appeal from a conviction for the offense of aggravated robbery; the punishment is imprisonment for 16 years.

In view of our disposition of this appeal we will only discuss appellant's contention that the court erred in not responding to his timely written objection complaining that the court's charge did not include an instruction on the law pertaining to the voluntariness of his written confession. Appellant argues that the evidence before the jury was sufficient to raise a fact issue of whether he had the mental capacity to understand his constitutional rights and thus make a knowing and intelligent waiver of those rights when he made and signed the confession. We agree and reverse the conviction.

The appellant was eighteen years of age at the time of the offense; his confession was taken on the same day as the offense. Appellant did not complete the first grade of elementary school and had only attended special aid classes. He could not read, and he could not write, except that he could write his name. Police Officer K. W. Bangs did not know that the appellant could not read or write when he took the appellant's statement. Officer Bangs said that if he had known the appellant was illiterate he would not have taken the appellant's statement in the manner that he did because he would not have been convinced that the appellant understood what was in the statement.

Dr. John Price, a clinical psychologist, had administered I.Q. tests to the appellant when he was fourteen years old. Appellant had an I.Q. of 61 and was suffering from mild mental retardation. In laymen's terms, appellant would formerly have been classified as a moron. While the tests were administered four years prior to the offense, Dr. Price's opinion was that appellant would not score significantly higher at the time of the trial. Dr. Price stated that appellant was an impulsive type individual and could easily be led by other persons.

When Dr. Price administered the tests to appellant at age fourteen, appellant was illiterate and could not solve any printed arithmetic problems. He could only spell his name and "cat." Appellant could not pronounce words, could only pronounce some and mispronounced many of the letters of the alphabet. Dr. Price stated that at the time he saw the appellant he doubted whether appellant could understand the warning printed at the top of the confession form. Dr. Price's opinion was that appellant would not understand the words "terminate," "coercion," "proper judicial authority," or "knowing and intelligent waiver." However, Dr. Price said that there was a good chance appellant would understand these words if they were explained to him and repeated.

Dr. John Holbrook, a psychiatrist, examined the appellant approximately six months after the offense. He also found the appellant to be suffering from mild mental retardation. He was also of the opinion that appellant would not understand the words "coercion" or "proper judicial authority." Dr. Holbrook's opinion was that appellant had the ability to assimilate the general idea or concept of the constitutional rights printed at the top of the confession form; however, he felt appellant would have difficulty with certain parts of the terminology contained in the form.

Police Officer K. W. Bangs explained to appellant his rights on the way to the police station and again before he took appellant's statement. He said he explained the rights step by step to be sure appellant understood each individual right. A clerk, Mary Belford, typed the confession from Officer Bangs' notes and witnessed appellant sign the confession. Before appellant signed the statement, Officer Bangs gave appellant and Mrs. Belford a copy to read while he read the statement to appellant, including the printed warning at the top. Neither Bangs nor Mrs. Belford was aware that appellant could not read. They said the appellant appeared to be reading along as Bangs read the statement. The appellant indicated that the statement was his and

signed it in front of Mrs. Belford. Both Bangs and Mrs. Belford said the appellant appeared to understand what was happening and that he appeared normal.

In *Washington v. State,* 388 S.W.2d 200 (Tex.Cr.App.1965), expert witnesses testified that the defendant suffered from mild mental retardation. He had a very small amount of general information, and his ability to comprehend information and put it together was quite limited. Washington's I.Q. "would place him at the very extreme lower limits of normal in his functioning." The defendant had been confined in jail approximately fifty hours after arrest and before he gave his confession. This Court held that the trial court did not err in admitting the confession in evidence, but it was held to be reversible error for the court not to charge the jury on the issue of the voluntariness of the confession in response to a timely objection.

In *Moreno v. State,* 511 S.W.2d 273 (Tex. Cr.App.1974), the decision in *Washington v. State, supra,* was explained. In *Moreno* it was said that there was no evidence of a coercive environment surrounding the taking of Moreno's confession and the court held that Moreno's youthful age alone would not create a fact issue for the jury as to the voluntariness of the confession. In the case at bar, while there is no evidence of a coercive atmosphere as was the situation in *Washington,* there is evidence that appellant did not have the mental capacity to understand the warnings he was given prior to giving his statement to the police.

In *Bizzarri v. State,* 492 S.W.2d 944 (Tex. Cr.App.1973), testimony was offered before the jury that the defendant was of low mentality and had only spent six years in special education classes. The jury was instructed not to consider the statement if it believed or had a reasonable doubt that the defendant made the statement while she was in such a mental condition that she did not know or understand what she was doing. This Court said:

". . . although testimony of her low mentality would not be without weight on the question of admissibility of a con-

fession of a crime, the fact that it was made by one whose mentality was at a lower level is to be taken into consideration and viewed as a fact or indicating, although not establishing, that the confession was lacking in voluntariness.

"Whether appellant had the mental competency or intelligence required to waive her rights was for the Court *and jury.* The issue was fairly presented and resolved against appellant." (Emphasis added.)

The defendant in *Encina v. State,* 471 S.W.2d 384 (Tex.Cr.App.1971), offered the testimony of his counselor in elementary school. The counselor's school records, made some five years prior to the time the confession was made, indicated that defendant had done poorly in school and was frequently absent. Encina had an I.Q. of 64, "the highest of what is considered mentally moron." Encina did not request that the jury be charged concerning the voluntariness of his confession, but argued that the evidence conclusively established his lack of mental capacity. In rejecting this contention it was said:

"While it is true that the testimony of the school counselor raises an *issue of fact* as to whether or not appellant had the mental capacity to make a voluntary waiver of his rights, it does not clearly show that appellant was incapable of waiving his rights." (Emphasis added.)

In *Casias v. State,* 452 S.W.2d 483 (Tex. Cr.App.1970), it was stated:

"Of course, if the mental subnormality is so great that an accused is incapable of understanding the meaning and effect of his confession, then it would not be admissible. *Grayson v. State,* 40 Tex.Cr.R. 573, 51 S.W. 246.

"In *Hanus v. State,* 104 Tex.Cr.R. 543, 286 S.W. 218, it was pointed out that there is considerable authority for the proposition that in determining the admissibility of a confession of a crime, *the fact that it was made by one whose mentality was at a lower than normal level is to be taken into consideration and viewed as a factor indicating, although not estab-*

*lishing, that the confession was lacking in voluntariness."* (Emphasis added.)

In *Casias v. State, supra,* the trial court instructed the jury generally on the voluntariness of the confession, but refused the defendant's special instruction to the jury to disregard his confession if they found from the evidence or had a reasonable doubt that he did not have the mental ability to understand the contents thereof and the warnings allegedly given. This Court stated:

> "While the trial court might have been well advised to have responded to appellant's objection to the charge, we cannot conclude, in light of the evidence offered, the charge on voluntariness and counsel's jury argument on intelligence and mental ability as a factor to be considered in determining voluntariness, that the court's failure to charge as desired was calculated to injure appellant's rights or deprive him of a fair and impartial trial."

■ In the case at bar the trial court did not give the jury an opportunity to consider whether or not appellant knowingly, intelligently and voluntarily waived his rights prior to making his confession. The absence of even a general charge on this issue would prevent appellant's counsel from arguing appellant's mental incapacity as a factor in determining the voluntariness of the confession as was done in *Casias v. State, supra.*

■ We recognize that appellant's objection to the court's charge for its failure to include instructions on the voluntariness of the confession did not point out to the trial court exactly what evidence he believed raised the issue of voluntariness. However, in view of the decision in *Casias v. State, supra,* that a general charge on the issue of the voluntariness was sufficient for the jury to pass upon the issue of Casias' mental capacity as a factor to be considered in determining whether the confession was voluntary, we hold that appellant's objection to the absence of even a general charge on voluntariness of the confession was sufficient to preserve his complaint for review.

Objections very similar to those in the case at bar were made to the admission of confessions in the cases of *Hatke v. State,* 455 S.W.2d 310 (Tex.Cr.App.1970); *Casias v. State, supra; Price v. State,* 496 S.W.2d 103 (Tex.Cr.App.1973); *Nash v. State,* 477 S.W.2d 557 (Tex.Cr.App.1972); and *Born v. State,* 411 S.W.2d 739 (Tex.Cr.App.1967). This Court held that each of the confessions was admissible in the circumstance of each case; however, in each case the jury was charged on the issue of the voluntariness of the confession.

■ The State argues, relying on the case of *Jones v. State,* 156 Tex.Cr.R. 475, 243 S.W.2d 848 (1951), that the charge on insanity adequately protected the appellant's rights because the confession was given on the same day as the offense. The State says that since the jury found the appellant was sane at the time of the offense this is equivalent to a finding that appellant was not suffering from a mental defect or incapacity at the time the confession was given. A person can be sane, that is, he may know that his conduct is wrong and he may be capable of conforming his conduct to the requirements of the law, yet at the same time be mentally incapable of understanding his constitutional rights concerning the making of a confession. The issue of insanity as a defense and the issue of a person's mental capacity to understand his constitutional rights are entirely distinct. In *Jones v. State, supra,* the opinion indicates that the appellant's complaint concerned the "failure of the court to give a special charge on the question of insanity of appellant at the time of the making of the confession." We have pointed out in the instant case that insanity at the time the confession was given is not the issue, as it apparently was in *Jones v. State, supra.*

■ Article 38.22, V.A.C.C.P., provides that when the issue of the voluntariness is raised by the evidence before the jury the jurors shall be instructed that unless they believe beyond a reasonable doubt that the statement was voluntarily made, they shall not consider such statement for any purpose. Even though the State offered evi-

dence that appellant understood his rights and voluntarily waived these rights prior to giving his statement, the evidence that appellant lacked the mental capacity to understand his rights was before the jury and raised an issue of fact. The trial court was correct in admitting the confession, but erred in failing to charge the jury on the issue of voluntariness of the confession as required by Article 38.22, V.A.C.C.P., when there is an issue of fact.

In another ground of error the appellant complains of the trial court's failure to make findings of fact on the voluntariness of the confession concerning whether the appellant had sufficient mental ability to understand the statutory warnings. In the event the appellant's confession is offered in evidence upon another trial of this cause, the trial court should make findings of fact as to the appellant's mental ability to understand his constitutional rights.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.